(93 South. 284)

**WILLIAMS v. STATE. (8 Div. 895.)**

(Court of Appeals of Alabama. June 13, 1922.)

1. **Criminal law ⬤⟳1092(1)—Motion to establish bill of exceptions regularly presented, signed, filed, and incorporated in record dismissed as unnecessary.**

Where the record showed that judgment was rendered October 10, and a bill of exceptions regularly presented to the presiding judge December 20, duly and regularly signed by him March 17, filed with the clerk April 1, and incorporated in the record, a motion to establish the bill will be dismissed; there being no occasion for any action thereon.

2. **Homicide ⬤⟳171(1)—That defendant had not been discharged from employment and could recover back time if acquitted held irrelevant.**

In a prosecution for assault with intent to murder a fellow railway employé, testimony that defendant had not been discharged from the service and could recover back time, if acquitted, was properly excluded as irrelevant.

3. **Witnesses ⬤⟳367(2) — That state's witness had looked over jury list held immaterial.**

That a state's witness had looked over the jury list was immaterial, where he testified he had not helped to select the jury.

4. **Witnesses ⬤⟳372(2)—Defendant may ask names of state's witnesses with whom another state's witness testified he had discussed case.**

In a prosecution for assault to murder a fellow railroad employé, where the division superintendent testified on cross-examination by defendant that he had discussed the case with state's witnesses several times, defendant could ask the names of such witnesses and what he said to them as tending to show a concert of action, a conspiracy, or improper influence indicating bias on their part.

5. **Witnesses ⬤⟳373—To ask names of state's witnesses with whom witness discussed case, and what was said, defendant need not lay predicate.**

To ask questions on cross-examination of a state's witness as to the names of other state's witnesses with whom he testified he had discussed the case, and what he said to them, defendant need not lay a predicate.

6. **Criminal law ⬤⟳364(3)—Remarks to and by defendant immediately after shooting admissible as res gestæ.**

In a prosecution for assault with intent to murder, what was said to and by defendant immediately after and as a result of the shooting was properly admitted as part of the res gestæ.

7. **Criminal law ⬤⟳382—Whether prosecuting witness knew counsel had been employed to prosecute defendant held immaterial.**

In a prosecution for assault to murder, where the party assaulted testified that he did not employ counsel to prosecute defendant, it was immaterial whether he knew counsel had been employed.

8. **Homicide ⬤⟳164 — Questions as to defendant's sickness prior to difficulty held improper.**

In a prosecution for assault to murder, questions seeking to prove defendant's sickness prior to the difficulty were improper.

9. **Criminal law ⬤⟳338(7)—Effect of outcome on defendant's continued employment held immaterial.**

In a prosecution for assault to murder a fellow railroad employé, it was immaterial what effect conviction or acquittal would have as to defendant's continued employment by the railroad.

10. **Criminal law ⬤⟳655(1)—Court's remark that trainmen carrying guns on runs violated law held improper.**

In a prosecution for assault to murder a fellow railroad employé, the court's remark in the presence and hearing of the jury that if trainmen carried guns on their runs, as testified to by defendant, they violated the law, was improper.

11. **Criminal law ⬤⟳448(3) — Question as to why defendant had pistol held improper.**

In a prosecution for assault to murder, a question as to why defendant had the pistol was improper as calling for a conclusion.

12. **Homicide ⬤⟳160—Who defendant got pistol from held immaterial.**

In a prosecution for assault to murder, it was immaterial who defendant got the pistol from.

13. **Criminal law ⬤⟳390—Defendant charged with assault to murder cannot testify as to intent.**

In a prosecution for assault with intent to murder, defendant could not testify as to the intent with which he fired.

14. Homicide ⬤⟿84—No premeditation necessary to constitute assault with intent to murder.

If an assault is maliciously made with intent to murder no premeditation is necessary.

15. Homicide ⬤⟿300(15)—Charge on self-defense properly refused as omitting doctrine of retreat.

In a prosecution for assault with intent to murder, a charge to acquit if defendant did no more than was necessary to protect himself against an assault and was free from fault in bringing on the difficulty was properly refused as omitting the doctrine of retreat.

Appeal from Circuit Court, Colbert County; C. P. Almon, Judge.

Sam Williams was convicted of assault with intent to murder, and he appeals. Reversed and remanded.

The following were the charges refused to defendant.

(2) You cannot find Williams guilty as charged unless you believe from the evidence that the facts are such as would constitute premeditated killing with malice aforethought, had Woodall died from said shooting.

(6) If you believe from the evidence that Williams did nothing more than was necessary to protect himself against an assault by Woodall, if Woodall made an assault, you must find Williams not guilty, if Williams was free from fault in bringing on the difficulty.

Bowers, Dixon & Bowron, of Birmingham, and G. E. Barnett, of Florence, for appellant.

The court erred in its rulings on the admission and rejection of evidence. 29 Ala. 457, 65 Am. Dec. 413; 191 Ala. 3, 67 South. 981; 151 Ala. 249, 44 South. 203; 137 Ala. 414, 34 South. 997; 125 Ala. 457, 28 South. 384; 172 Ala. 257, 54 South. 677; 171 Ala. 19, 55 South. 159; 86 Ala. 551, 6 South. 143, 4 L. R. A. 848; 85 Ala. 154, 4 South. 669; 200 Ala. 103, 75 South. 479; 86 South. 89. The fact that defendant had been sick and was weak was relevant. 111 Ala. 28, 20 South. 632, 56 Am. St. Rep. 17; 134 Ala. 1, 32 South. 704; 143 Ala. 67, 39 South. 147; 88 Ala. 4, 7 South. 98. The court erred in remarking that all who carried pistols were law violators. 17 Ala. App. 674, 88 South. 211; 8 Ala. App. 46, 62 South. 977; 140 Ala. 137, 37 South. 223; 139 Ala. 47, 36 South. 1012; 90 Ala. 596, 8 South. 670.

Harwell G. Davis, Atty. Gen., for the State.

Brief of counsel did not reach the Reporter.

SAMFORD, J. [1] This cause is submitted on motion to establish a bill of exceptions and on the merits. Upon an examination of the record, we find that the judgment was rendered October 10, 1921, bill of exceptions regularly presented to the presiding judge December 20, 1921, and duly and regularly signed by him March 17, 1922, and filed with the clerk of the circuit court April 1, 1922. The presentation, signing, and filing appear to be in all things regular and legal, and the bill of exception being incorporated in the record, as it should be, there is no occasion for any action on the motion to establish the bill of exception and therefore the motion to establish is dismissed.

[2] The defendant and Woodall, the assaulted party, were both employés of the Southern Railway, and had a difficulty in the superintendent's office in Sheffield, in which defendant shot and seriously wounded Woodall. During the cross-examination of Cameron, the superintendent of that division, the defendant undertook to prove that the defendant had not been discharged from the service of the railway company and that if acquitted defendant could recover of the railway company his back time. These facts, even if true, could not possibly have any bearing, even remotely, upon the issues involved in this case.

[3] The witness having testified that he had not "helped to select the jury in this case," the fact that he looked over the jury list could not affect the issues.

[4] The witness having testified on cross-examination that he had "talked it over with witnesses summoned for the state several times and gone into the details of the case with other witnesses," he was further asked to name the witnesses with whom he had talked. This witness was the superintendent of the division under whom both defendant and Woodall worked; the difficulty occurred in his office and in his presence, and grew out of a controversy between the witness and defendant. The prior testimony of this witness had shown some activity on his part in the interest of the prosecution, and on cross-examination the defendant was entitled to inquire into the extent of his activities and to know which of the state's witnesses had been talked to by him, and even as to what he said to them, as tending to show bias. Banks v. State (Ala. Sup.) 39 South. 921; Whitsett v. Belue, 172 Ala. 256, 54 South. 677.

[5] If there was a concert of action, or conspiracy, or improper influence that would have a tendency to show a bias on the part of the state's witnesses in giving their testimony, the defendant would have a right to show it and, when the state's witnesses were on the stand and testifying, these things were the proper subjects of inquiry on cross-examination. Haisten v. State, 5 Ala. App. 56, 59 South. 361. Nor is it necessary to lay a predicate in order to ask such questions on cross-examination. The

witness knows which of the state's witnesses he had been discussing the evidence with and what was said, and the defendant did not. Who it was and what was said was the purpose of the question.

[6] What was said to defendant, and what defendant said immediately after the shooting, as the resultant utterances of the parties present, was a part of the res gestæ and properly admitted.

[7] The witness Woodall having testified that he did not employ counsel to prosecute the defendant, it was immaterial whether he knew counsel had been so employed or not.

[8] Questions seeking to prove that prior to the difficulty defendant had been sick were improper, and objections to them were properly sustained.

[9] What effect the conviction or acquittal of the defendant would have with regard to his continued employment by the Southern Railway Company could have no bearing on the issues in this case.

[10-13] The defendant, while being examined as a witness, was asked, "Do all trainmen carry guns on their runs?" to which answer was made: "Yes, sir, the biggest half of them do." Whereupon the court, in the presence and hearing of the jury, remarked that, "If they did, they violated the law." This remark, coming as it did from the court, in connection with the other testimony that had been given, could have no other effect than if he had said to the jury this defendant was at the time of this difficulty a law violator, and was an improper remark. The question as to why he had the pistol called for a conclusion, and who he got it from was immaterial; nor could the defendant testify as to his intent with which he fired the shot.

The remaining rulings of the court on the admission of testimony were free from error.

[14] Charge 2 refused to defendant was bad. If the assault was malicious, no premeditation was necessary.

[15] Charge 6 refused to defendant omits the doctrine of retreat.

For the error pointed out, the judgment must be reversed, and the cause remanded.

Reversed and remanded.