(136 So. 425)

**BLACK v. STATE.**

8 Div. 391.

Court of Appeals of Alabama.

Aug. 4, 1931.

Bradshaw & Barnett, of Florence, for appellant.

Thos. E. Knight, Jr., Atty. Gen., for the State.

BRICKEN, P. J.

The prosecution of this appellant, by indictment, was for an alleged violation of the offense denounced under section 5411 of the Code 1923, which makes it unlawful for any person to have carnal knowledge of a girl over the age of twelve and under sixteen years; or abuses such girl in the attempt to have carnal knowledge of her. The provisions of this section of the Code do not apply to boys under sixteen years of age.

The first count of the indictment in this case contained the unnecessary averment that the accused was a boy over the age of sixteen years. This is defensive matter, and it was not necessary that the indictment should have alleged that the defendant was over sixteen years of age. Miller v. State, 16 Ala. App. 534, 79 So. 314. The second count of the indictment omitted the foregoing averment and followed, in substance, the analogous form of indictment in the Code 1923 (section 4556, Form 31), and was sufficient.

In the case at bar there was no dispute or conflict in the evidence as to the age of the alleged injured party, the girl in question. It affirmatively appeared that she was over the age of twelve and under the age of sixteen years at the time of the alleged commission of the offense. The allegation in the indictment as to this was fully proven. This left two controverted questions: (1) Did the accused carnally know or abuse this girl in the attempt to carnally know her? (2) Was the accused over the age of sixteen years at the time of the alleged commission of the offense? As to the first inquiry, the evidence was in sharp conflict. The girl herself testified that on a certain night in December (13th), 1928, he (the defendant) had sexual intercourse with her at the home of one Henry Killen in Lauderdale county, Ala., where at the time she was visiting.

She testified "that on the occasion it is alleged the defendant had sexual intercourse with her she and Reetha Hartsfield. Willie Michael and the defendant, were at Henry Killen's home; that the boys came there about seven thirty and stayed until about nine thirty; that all four of them were in the same room all of the time except about ten minutes when she and the defendant went out on the porch; that at the time she claims that he had intercourse with her she said I was standing up. I was not leaning against anything. I was standing on the porch without leaning against anything and it was there he had this sexual intercourse with me." She also testified: "He never did have sexual intercourse with me after that time."

There was no other evidence on this question, and the state necessarily relied upon the testimony of this witness for a conviction.

The defendant strenuously denied that he had sexual intercourse with the girl as testified to by her. He stated that "he did not have any intercourse with Rachel Davis and that he was born December 14, 1913"; which, if true, made him under sixteen years of age at the time of the alleged commission of the offense. He said "that the four of them stayed in one room together within hearing of each other; that he and Rachel went out on the porch to look for some water but not finding it he smoked a cigarette and they returned to the room and that he had no carnal knowledge of her, nor did he in any way try to have anything to do with her." The following testimony tended to corroborate the appellant:

Mrs. Sallie Killen, the wife of Henry Killen, testified that the defendant, Rachel Davis, Reetha Hartsfield, and Willie Michael, were all at her house; that they all stayed in the room together; that is, all the young people stayed in the room together; that the boys left at 9:30 and the girls came into her room and Rachel Davis had nothing to say about having been mistreated; that she did not appear to be nervous, and that she did not see anything from her appearance out of the ordinary; that Rachel Davis ate breakfast at her house the next morning. She went to school and came back and had lunch, and at no time did she complain of having been mistreated by the defendant; that, since it is said that the defendant had carnal knowledge of Rachel, neither her father nor her mother have at any time come to her and asked if she knew anything about it.

Willie Michael testified that he was there and was at all times within hearing of the defendant and Rachel Davis; that he did not hear the defendant say anything about his age, nor that he would be nineteen years old the next day; that the defendant and Rachel were on the porch a few minutes, but that he did not hear any racket or see anything out of the way.

Reetha Hartsfield, the other girl present, testified to the same effect.

The prosecutrix, Rachel Davis, was permitted, over the timely objection and exception of the defendant, to say that she had given birth to a baby, and that it was born on September 15, 1929.

Dade Davis, her father, was also permitted, over the timely objection and exception of the defendant, to say that Rachel had given birth to a child. He was permitted to be recalled and identify and exhibit the baby to the jury as being that of Rachel and born by the alleged carnal knowledge. The defendant objected to this and moved the court for

a mistrial in the case for the illegal showing of the child to the jury. The court in his ruling on this point said: "Gentlemen of the jury, the purpose for which profert of this child was made before you is simply on the question as to whether or not the defendant told the truth when he said that he had no intercourse with this girl at all."

To the foregoing statement and ruling of the court the defendant reserved an exception. This ruling of the court was palpable error, and of itself would necessitate the reversal of this case. In Davis v. State, 20 Ala. App. 463, 103 So. 73, this court held: "In prosecution for carnal knowledge of girl under age of consent, proof of birth of child, while establishing fact of carnal knowledge and tending to fix time of commission of offense, is not evidence that accused is guilty person." The foregoing statement of the trial judge is in direct conflict with the Davis Case, supra. See also Marshall v. State, 22 Ala. App. 552, 117 So. 612.

◼ The question of the credibility of a witness is solely for the determination of the jury, and it is improper for the court to comment on or express an opinion directly or by implication of the credibility of the witness. The reason is that words or conduct of the trial judge may on the one hand support the character of testimony of a witness or on the other hand destroy the same in the estimation of the jury; and thus his personal and official influence is exerted to the unfair advantage of one of the parties with a corresponding detriment to the cause of the other. 38 Cyc. 1320 and 1321.

In the opinion of this court in the case of Holmes v. State, 22 Ala. App. 373, 115 So. 849, it was said: "The interests of public justice and the punishment and prevention of crime on the one hand, and principles of fairness toward the prisoner on the other, demand that the presiding judge should not entertain, or, at least, should not manifest, any partiality for or against the accused during the examination of the witnesses. * * * The judicial power to examine a witness should be carefully exercised so as not to prejudice the accused, and questions by the court which assume the prisoner's guilt, or which assume the witnesses are testifying falsely, or which give to the jury the impression that the court has determined that the accused is guilty, furnish a basis for a reversal."

◼ The defendant requested in writing several charges (1, 3, 5, 9) to the effect that the birth of the child could not be considered by the jury as evidence that the defendant was the guilty agent. These charges should have been given, and their refusal was error. In a case of this character the birth of a child is not necessarily a material inquiry. Such fact, however, has been held to be permissible, not,

as stated by the court, "to show whether or not the defendant told the truth when he said that he had no sexual intercourse with this girl at all," but solely for the purpose of establishing the corpus delicti. As was said in the Davis Case, supra: "In a prosecution for carnal knowledge of a girl under 16 years of age, the paternity of a baby born to the girl is not necessarily a material inquiry. The fact that the girl gave birth to a child is material and relevant as tending to prove the corpus delicti. We know as a scientific fact that when a child is born there has been an act of sexual intercourse, and as a matter of common knowledge we also know that the period of normal gestation is approximately 270 days. So that the proof of the birth of a child to a girl under 16 years of age may be said to establish the fact of carnal knowledge and to tend to fix the time at which the crime was committed. But neither of these facts can be taken as evidence that the defendant is the guilty agent."

"The general rule is that in case of statutory rape of a female under the age of consent, pregnancy, or pregnancy and miscarriage or birth of a child, may be shown as evidence of the sexual intercourse, and there is no reason why such evidence should not be admissible where the woman was over the age of consent. Of course in either case it could not be evidence that defendant committed the crime." 33 Cyc. 1476.

As stated, the age of the defendant in this case was a disputed question. The great preponderance of the evidence on this question seems to us to have shown that at the time of the alleged commission of the offense he was under the age of sixteen years.

Eulalia Killen, a sister to the defendant, testified that he was born December 14, 1913.

Mrs. M. M. Stutts, the midwife, who attended Mrs. Black at the birth of the defendant, testified that he was born December 14, 1913.

Maggie Black, the mother of the defendant, testified to the same effect.

Dock Black, the father of the defendant, testified to the same effect.

◼◼ There was other evidence of like import, including that of the defendant. However, there was some slight evidence to the contrary, which included a purported admission upon the part of the defendant, as testified to solely by the prosecutrix. This made a jury question. In this connection the state in its rebuttal testimony introduced H. L. Stutts as a witness. He testified that in 1928 his wife was school census enumerator, and that he, for her, went to the mother of the defendant and she gave information as to the defendant's age and as to his sister Tessie Black's age, and the court permitted the state to introduce the census report. The defend-

ant objected to this because it was illegal and not the best evidence; because it was hearsay and not certified by the legal custodian. "The age of a child may not be shown by the school census in a statutory rape case." Haywood v. State, 61 Tex. Cr. R. 92, 134 S. W. 218, Underhill's Criminal Evidence, 91n.

In the case of Battles v. Tallman, 96 Ala. 403, 11 So. 247, 248, the plaintiff sued the defendant, as probate judge, for the recovery of the statutory penalty of $200 for issuing a license for the marrying of the plaintiff's minor daughter contrary to law, and in that case the court held: "The controverted question of fact in the case was the age of the plaintiff's daughter, Mrs. Mayo, at the date of the issuance of the license for her marriage. The plaintiff himself testified that his daughter was at that time under 18 years of age. * * * The plaintiff himself admitted that he stated the ages of his children to Mr. Murphree, who was the census enumerator in 1880. Mr. Murphree was examined as a witness for the defendant. He testified that he put down the answers of the plaintiff to the questions as to the ages of the members of the latter's family, and that the census book which was kept in the office of the judge of probate was a copy made by the witness from his original entries, which he had sent to Washington. Against the objection of the plaintiff this census book itself was admitted as evidence for the defendant. The entries therein showing the ages of plaintiff's children were memoranda which the witness could have referred to for the purpose of refreshing his memory as to the statement on the subject made to him by the plaintiff. The absence of the original was accounted for, and the correctness of the copy was shown. But such a memorandum itself is not admissible, except when called for by the adverse party, unless the witness, after examining it, cannot testify to a present recollection of the fact therein noted. If the witness, when his memory has been refreshed, can state the particulars from recollection, such statement is the better evidence, and the party who calls him is not entitled to the admission of the memorandum as evidence in the cause. But if the witness, being unable to recall the matter so that he now remembers what occurred, yet testifies that at or about the time the memorandum was made he knew its contents, and knew them to be true, then the memorandum itself may be admitted in connection with his testimony to this effect."

In the present case, it was not shown that the witness knew the memorandum to be correct, and it was not shown that the witness was unable to recall the answer of the mother of the defendant to the question as to the age of her children. Under this rule of evidence

the memorandum itself was illegal and prejudicial to the defendant. It was illegal for the further fact that it was not evidence of a statement made by the defendant and it was not evidence of his age.

▆▆ The state further in rebuttal of the defendant's evidence offered Dr. W. D. Hubbard, who testified that he was the health officer for Lauderdale county, and that he kept a record of certificates of birth of children in this county. He then identified a certificate signed by Mrs. M. M. Stutts of the birth of Tessie Oliver Black. He testified that the certificate which he had was a copy made from the original which was sent to Montgomery. He further testified that he did not know it was correct; and it had not been certified by the state registrar. Section 7674, Code of Alabama 1923, provides: "Registers of marriages, births, and deaths, kept in pursuance of law, * * * may be certified by the custodian thereof; and when so certified, are presumptive evidence of the facts therein stated." Section 1087, Code of Alabama 1923 (as amended, Acts 1927, p. 780), provides: "The State registrar, upon request, shall supply to any applicant entitled to same a certified copy of the record of any birth or death registered under provisions of this article for the making and certification of which he shall be entitled to a fee of fifty cents, to be paid by the applicant. Any such copy of the record of a birth or death, when properly certified by the State registrar, shall be prima facie evidence in all courts and places of the facts therein stated."

The defendant objected to the introduction of the birth certificate on the ground that it was illegal and not the best evidence. The best evidence would have been a copy of the original properly certified by the state registrar. Therefore the introduction of this birth certificate was illegal and prejudicial error. It was illegal and immaterial for the further reason that it was not a birth certificate of the defendant, but that of his sister, Tessie Oliver Black.

▆ As stated, the evidence as to the defendant's carnal knowledge of Rachel Davis was in conflict, but it is insisted that, when her evidence as to the unlawful act is considered in the light of human experience and common knowledge, the defendant's motion for a new trial should have been sustained, and that the weight of evidence against the verdict is so great that "the substantial ends of justice require the examination of the facts by another jury."

We are of the opinion that these insistences contain merit, and that the motion for a new trial was erroneously denied.

Reversed and remanded.