19 So.2d 361

**CARTER v. STATE.**

8 Div. 391.

Court of Appeals of Alabama.
June 27, 1944.

Rehearing Denied Aug. 22, 1944.

Proctor & Snodgrass, of Scottsboro, for appellant.

Wm. N. McQueen, Acting Atty. Gen., and John O. Harris, Asst. Atty. Gen., for the State.

CARR, Judge.

Appellant was tried in the Circuit Court of Jackson County, Alabama, upon an indictment charging murder in the second degree. He was convicted of manslaughter in the second degree. From the judgment of conviction and sentence rendered, he appeals to this court.

We agree with the Attorney General, in his brief filed in this cause, that "the statement of facts as set forth in appellant's brief is substantially correct in every material respect." The statement follows.

"The testimony offered in behalf of the State and on which the State relied for a conviction of appellant was to the effect that the appellant, James Carter, the deceased man, James J. Smith, and the State's witness, Charlie Smith, were riding in an automobile belonging to the appellant, near the community of Hollywood, Alabama. The only witness who tended in any way to connect the appellant, James Carter, with the death of James J. Smith was the State's witness, Charlie Smith. The witness, Charlie Smith, testified that he and the appellant, Carter, and the deceased man, James J. Smith, were riding in an automobile that belonged to appellant and were coming in the direction of Hollywood, Alabama; that in some manner, the car ran into a ditch and the deceased man, James J., or Jim, Smith, got out of the car to push it out of the ditch. The witness further testified that the appellant soon thereafter got out of the car himself and went back to where James J. Smith was and then came back to the car and got a car crank out of the car and hit the deceased man, James J. Smith, over the head with the car crank, or, as the witness at another point of his testimony said that appellant 'warped (James J. Smith) on the side of the head' with said car crank. There is some testimony in the case to the effect that all three parties were drinking on this occasion, but, as we understand the situation from the testimony, the witness, Charlie Smith, undoubtedly got the best of the other two in the drinking bout as it

appears from the evidence that when he was arrested he had 'passed out' in or near a hog pen. According to the testimony of the witness, Smith, there was no trouble whatever between the deceased man and the appellant and if the appellant did strike the deceased man on the head with a car crank as Smith testified, then there is nothing in the testimony to show any excuse or justification for the same. The testimony further shows that the deceased man, James J. Smith, was later found lying in the road close to where the witness Smith testified he was struck with a car crank, and that sometime shortly thereafter he died. The testimony shows that the two Smiths and appellant were together and that the alleged injuries occurred to James J., or Jim, Smith somewhere between 11 and 12 o'clock in the morning, and that he was found lying in the road shortly after noon by Dr. D. W. McCrary, who was also a witness for the State.

"The testimony for appellant is in direct conflict with the testimony given by Charlie Smith for the State. The appellant contended that while it was true that he and Charlie Smith and the decedent, James J. Smith, were riding in his automobile in the Hollywood community on the morning of the day that James J. Smith was injured, he contended and testified that he had no trouble whatever with the deceased man and had never had any trouble with him at any time, but that the decedent Smith got out of the car before the car ever got into the ditch and that there was nothing wrong with Jim Smith, or James J. Smith, the decedent, at the time the appellant last saw him."

With commendable candor, appellant's counsel urges that the prime question involved in this appeal is the refusal of the trial court to grant appellant's motion for a new trial on the ground that the jury was not authorized to find the appellant guilty of manslaughter in the second degree under the evidence in this case. We are therefore requested to so hold as a matter of law. This we cannot do, and we will attempt to state why.

"When the indictment charges an offense of which there are different degrees, the jury may find the defendant not guilty of the degree charged, and guilty of any degree inferior thereto, or of an attempt to commit the offense charged; and the defendant may also be found guilty of any offense which is necessarily included in that

with which he is charged, whether it be a felony, or a misdemeanor." Code 1940, Tit. 15, § 323. Dennis v. State, 112 Ala. 64, 20 So. 925; Compton v. State, 110 Ala. 24, 20 So. 119; Kelly v. State, 235 Ala. 5, 176 So. 807; Keel v. State, 29 Ala.App. 191, 194 So. 416.

 "As described at common law and under statutes substantially declaratory thereof, involuntary manslaughter consists in the killing of another without malice and unintentionally, in doing some unlawful act not amounting to a felony or naturally tending to cause death or great bodily harm, or in doing some act lawful in itself in an unlawful manner or negligently, or by the negligent omission to perform a legal duty. 'The unlawfulness of the act in connection with which the killing occurs is the element which distinguishes involuntary manslaughter from a killing excusable as by accident or misfortune. It is difficult to separate sharply an unlawful act from a lawful act done in an unlawful manner or without due caution or circumspection. *It is immaterial by what means or methods the offense is committed."* (Emphasis ours.) 40 C.J.S., Homicide, § 55, pp. 918, 919. See also Sawyer v. State, 20 Ala.App. 504, 103 So. 309; Jones v. State, 21 Ala.App. 234, 109 So. 189.

 The evidence in the case under consideration is silent as to the size, weight or material of the "automobile crank" alleged to have been used with which to strike the deceased. It was not introduced in evidence and, so far as the record discloses, was not exhibited to the jury during the trial of the case. Indeed, the only evidence referring to the character of the instrument is that it was a "car crank". Even so, it is the use of the weapon and not its nature that determines whether or not it is likely to produce death.

A case very much in point is Greenway v. State, 59 Ga.App. 461, 1 S.E.2d 217, 218, in which the instrument used to cause the death of the deceased was a rock. The court said: "The mere fact that death resulted from the use of a rock does not necessarily show affirmatively that it was a weapon likely to produce death and that the killing was murder." The court held it was error for the trial judge to fail to instruct the jury on the subject of involuntary manslaughter.

We are of the opinion that the case of Duncan v. State, 30 Ala.App. 356, 6 So.2d 450, 452, has a decided, controlling influence on our determination of the case at bar. The instrument used in the Duncan case, supra, was a Coca-Cola bottle. The defendant threw the bottle, striking the deceased on the head. Death followed four days later. Upon appropriate request, the trial judge refused among others, the following charge: "I charge you, gentlemen of the jury, that manslaughter in the 2nd degree is included in the charge against the defendant." This court reversed the case, holding the question of guilt, vel non, of manslaughter in the second degree should have been submitted to the jury. It is therein held: "On the contrary, by similar deduction, if the blow was a contributory cause of death and there was a tendency in the evidence to establish that it was perpetrated wrongfully, but without malice or intention to kill, then the defendant could have been convicted of manslaughter in the second degree. Code 1923, Section 4460, Code 1940, Tit. 14, § 320; Sawyer v. State, 20 Ala.App. 504, 103 So. 309. Under such circumstances his charge relating to this degree of homicide should have been given."

With urgent insistence, appellant contends that the case of Jeffries v. State, 23 Ala.App. 401, 126 So. 177, should control our decision in his favor in this case. We have no disposition to depart from the holding in the Jeffries case, but the facts there were different, decidedly so. From the facts therein stated we quote: "Upon the trial, the shooting of deceased intentionally, under such circumstances that death would likely result, was admitted, but the defense interposed was the dual one of 'self-defense,' or 'shooting in order to apprehend a felon,' etc."

Reverting to the case under consideration—the evidence was without dispute that appellant, State's witness Charlie Smith, and the deceased were all drinking. How much or to what extent is not accurately disclosed. Appellant stated on cross-examination: "All of us were drinking. Charlie Smith and Jim were both pretty drunk. I would say I was the soberest one in the crowd." The party of three was congenial and happy, so it seems. Even up to the very moment when the deceased was hit on the head by appellant, not one word of disagreement or discord came up, according to State's witness Smith.

In his oral charge the trial judge correctly defined manslaughter in the second degree and thus submitted this issue to the

jury. There were no objections interposed by appellant's counsel to this part of the oral charge. The jury responded to these instructions. We are forced to the conclusion that under all the facts and circumstances in this case, all of which the jury should consider, it was within its province to so find.

In murder prosecutions it is the sole province of the jury to determine the guilt or innocence of defendant and, if convicted, degree of homicide, and also punishment. Ingram v. State, 29 Ala.App. 144, 194 So. 694, certiorari denied 239 Ala. 244, 194 So. 697; Wade v. State, 29 Ala. App. 115, 192 So. 425; Williams v. State, 26 Ala.App. 529, 163 So. 668.

The weight of the evidence is for the determination of the jury. It and it alone must find the truth of the facts. The courts are not privileged under the law to withhold this from the jury, it matters not how slight may be the tendency of the evidence to prove the material facts involved. Gibson v. State, 89 Ala. 121, 8 So. 98, 18 Am.St.Rep. 96; Burns v. State, 229 Ala. 68, 155 So. 561.

In discussing what we consider the prime question in this case, we are not unmindful of our duty. Code 1940, Tit. 15, § 389. We find the record proper is regular in all particulars; and, there being no reversible error in any ruling of the trial court, it follows that the judgment of conviction from which this appeal was taken must be affirmed. It is so ordered.

Affirmed.