39 So.2d 29

### WILLIAMS v. STATE.
6 Div. 529.

Court of Appeals of Alabama.
May 18, 1948.

Rehearing Denied June 1, 1948.

After Remandment Jan. 11, 1949.

Rehearing Denied Feb. 1, 1949.

A. A. Carmichael, Atty. Gen., and L. E. Barton, Asst. Atty. Gen., for the State.

Jas. A. McCollum, of Tuscaloosa, for appellant.

CARR, Judge.

This is the second appeal of this cause. Williams v. State, 32 Ala.App. 597, 28 So.2d 731. After remandment and on retrial in the court below, the appellant was convicted of manslaughter in the first degree.

From the aspect of the State's presentment, the evidence on the two trials does not vary in the main.

The court, in his oral instructions, limited the degrees of homicide to murder in

the second degree and manslaughter in the first degree. The appellant requested in writing that the court charge that manslaughter in the second degree was also included. This tender was refused.

"Manslaughter, by voluntarily depriving a human being of life, is manslaughter in the first degree; and manslaughter committed under any other circumstances is manslaughter in the second degree." Title 14, Sec. 320, Code 1940.

■ It is, of course, axiomatic that an indictment for murder in statutory form includes the lesser offense of manslaughter in the second degree. It follows that a charge to this effect should have been given, unless it can be determined that the evidence was not sufficiently efficacious to warrant the instruction.

■ "It matters not how slight the tendency of evidence may be towards establishing any material fact involved, the court cannot exclude it from the jury. Its weight is for their determination." Morris v. State, Ala.Sup., 39 So. 608, 611. See also, Burns v. State, 229 Ala. 68, 155 So. 561; Carter v. State, 31 Ala.App. 526, 19 So.2d 361.

■ The authorities are committed to the doctrine "that it is much the safer rule to charge upon all the degrees of homicide included in the indictment, when a party is on trial for murder, unless it is perfectly clear to the judicial mind that there is no evidence tending to bring the offense within some particular degree." Pierson v. State, 99 Ala. 148, 13 So. 550, 552.

■ The general rule applicable to the factual issues in the case at bar is stated in 41 C.J.S., Homicide, § 389, page 202:

"Where there were no eyewitnesses to the killing and the evidence is purely circumstantial, the court should instruct the jury as to the different grades of homicide, unless it is evident from the whole proof that accused is either guilty of murder or innocent; but the court need instruct only as to such degrees as are warranted by the proof, where there are eye witnesses to the homicide, and there is no doubt as to how it was committed."

■ By reference to the delineation of the evidence, which is set out with care and particularity in the former opinion, supra, it will be observed that apparently the deceased came to his death by wounds inflicted with some blunt instrument. The manner of this infliction and the facts and conditions incident thereto are left solely and entirely for determination by circumstantial evidence. Whether or not this proof was such as to constitute murder or the lesser offenses of manslaughter in the first or second degree should have been submitted to the jury under appropriate instructions by the court.

On the former appeal we held that it was error to omit the submission of the doctrine of manslaughter in the first degree. We did not specifically declare on the question of instant concern. It was not presented. Our views there stated cannot be taken to be out of harmony with the conclusions we now express. Rather, the contrary appears.

We now hold that it was error to preclude the instruction indicated. Duncan v. State, 30 Ala.App. 356, 6 So.2d 450; Dennis v. State, 112 Ala. 64, 20 So. 925; Carter v. State, supra.

Urgent and insistent complaint is registered in brief of counsel to the effect that the conduct and attitude of the trial judge throughout the progress of the proceedings were unfair to the accused, and by reason of this the substantial and unprejudiced rights of the defendant were seriously impaired. This claim relates to several incidents when the judge made voluntary comments with reference to the pertinency and probative value of testimony, and his apparent impatience at times with appellant's attorney.

We are impelled to the view that there is some merit in this position. However, since a reversal must be ordered, we will not laden this opinion with a treatment of this matter; neither will we declare a definite decision thereon.

■■ In contemplation of the possibility of another trial, we think it fitting and appropriate to make some response to the insistence. This we will do by quoting a

timely annunciation which the presiding judge of this court made in Dennison v. State, 17 Ala.App. 674, 88 So. 211, 213:

"The trial judge, as a natural consequence of this position and the many duties devolving upon him, is necessarily vested with much discretion in the conduct of the trial of causes, and, unless it clearly appears that there has been an abuse of this discretion, appellate courts will not interfere to control such discretion, but will presume that one occupying so important a position as that of circuit judge will accord to all litigants in his court the fair and impartial trial provided for in the Constitution of this state. That a trial judge wields a great influence upon the jury cannot be questioned, for it is their duty to follow his instructions as to the law. So, whenever he expresses an opinion on any disputed fact, or of the character of a witness, or compliments one attorney at the expense of another, or uses language which tends to bring an attorney into contempt before the jury, or uses any language or makes any intimation which tends to prejudice them, he commits an error of law, which would, of necessity, effect a reversal of the judgment and a remandment of the cause."

See also Holland v. State, 24 Ala.App. 199, 132 So. 601; Griffin v. State, 90 Ala. 596, 8 So. 670; Williams v. State, 18 Ala. App. 573, 93 So. 284; Moulton v. State, 199 Ala. 411, 74 So. 454.

While presenting his defense in chief the defendant introduced a number of witnesses who deposed that the accused had a good general character and a good reputation for peace and quiet. The State countered by introducing equally as large a number of persons who stated that appellant's character was bad. When the prosecution rested, appellant's counsel made known to the court that he had twelve other character witnesses, naming them, whom he desired to introduce. The court denied him the privilege.

■ Our courts are committed to the doctrine that a trial judge cannot limit defendant's character witnesses in attendance to any particular number. There seems to be an exception to the rule if the factual issue as to character of the defendant is not in dispute, and in some cases Supreme Court Rule 45 has been applied. Willis v. State, 20 Ala.App. 572, 104 So. 141; Leverett v. State, 18 Ala.App. 578, 93 So. 347; Latner et al. v. State, 20 Ala.App. 180, 101 So. 522, 523; Norris v. State, 16 Ala.App. 126, 75 So. 718.

■ Our approach here must be made from another point of view. The orderly and accepted procedure required that the appellant continue to a completion of this line of evidence before he rested. The court's declination of the tender about which complaint is made came when the offer was at an irregular and inappropriate place in the course of the trial. The question of whether or not the witnesses would be permitted to testify out of order addressed itself to the sound discretion of the court. We will not hold that there was a prejudicial abuse. Sansom v. Covington County Bank, 17 Ala.App. 556, 87 So. 406; Northern Alabama R. Co. v. Mansell, 138 Ala. 548, 36 So. 459.

There are numerous other questions presented by the record to which we have not responded. The nature of these is such that they will not likely recur in exact form in the event of another trial.

For error indicated, it is ordered that the judgment at nisi prius be reversed and the cause remanded.

Reversed and remanded.

### After Remandment

This appeal is again in this court after remandment by the Supreme Court.

In our original opinion we omitted to respond to a number of questions which the record presented. We felt that a reversal of the judgment obviated this necessity.

We expressed the view that there was some merit in the insistence of appellant's counsel to the effect that the conduct and attitude of the judge, in many instances, during the progress of the trial resulted in injury to the accused in his right to a fair and impartial trial.

We will not laden this opinion with a detailed recitation of each of the incidents against which this claim is registered. We

will excerpt some which we consider most pertinent and pronounced. For the sake of accuracy and convenience we will copy them as they appear in the record and make such comment as we deem necessary for illustrative setting.

While a State's witness was being cross examined:

"Q. Had the Winfield officers been there before you went?

"By Mr. Monroe: Object.

"By The Court: I'll let him answer, but having heard the testimony twice before I don't see the value of it."

During the cross examination of the same witness:

"Q. Do you have any knowledge of any other investigation they made?

"By The Court: Don't answer that."

While counsel for appellant was attempting to have a State's witness identify another party, the following occurred:

"By Mr. McCollum: I'd like to have him brought in.

"By The Court: Well, bring him in here.

"By Mr. McCollum: I'd like to see if he knows the face even if he doesn't know the name.

"(Mr. Freeman comes in and then goes out again)

"Q. You saw the gentleman come in the door there?

"By The Court: Are you going to ask him the question while Mr. Freeman is in here? You can't bring him in and let him go out and then ask the witness if he knew him. Bring him back in

"By Mr. McCollum: Except.

"By The Court: Mr. McCollum asked for Mr. Freeman, who is also charged with murder to appear before this witness, and Mr. Freeman appeared in the Courtroom in the presence of the jury and this witness, and then Mr. McCollum told Mr. Freeman to go on out without asking the witness if he recognized the man in the presence of Jim Freeman, and after Jim Freeman left the courtroom he then started to ask the witness if he recognized this man and the Court instructed Mr. McCollum to bring Jim Freeman back and have him in the

presence of the witness when he asked the witness the question.

"By Mr. McCollum: Except to the Court's ruling and remarks."

Appellant's attorney was making a statement in support of his objection to a question. The court interrupted by stating: "State your objections. Don't make a speech."

When a witness for defendant was being examined on direct examination:

"Q. And would he pass Mr. Trull's house?

"A. It was back up off the highway.

"By The Court: Prove that by Mr. Trull.

"By Mr. McCollum: He's one who isn't here.

"By The Court: Well, go ahead. I don't see what good it will do if Mr. Trull isn't here.

"By Mr. McCollum: Except.

"Q. You live this side of Baker's store and this side of where Jim Rosselle lives?

"A. Yes sir.

"Q. And did you see him any more that day?

"By The Court: Don't answer that. He testified that."

While another of appellant's witnesses was being examined:

"Q. You are positive that he was on the porch?

"By Mr. Strawbridge: Object to that positive stuff.

"By The Court: Yes, Mr. McCollum, don't you try to corroborate the testimony."

Redirect examination of the same witness:

"Q. (By Mr. McCollum) Now the question that we referred to here had to do with the time from 11:30 to 3. Do you know whether Annie Williams left anytime later on that afternoon besides the time about 3?

"By The Court: What good is that? The crime took place before that."

In connection with the incident just above, it should be noted that the State's evidence was wholly circumstantial. The exact time of the commission of the alleged offense depended upon this character

of proof. The physician testified that, when he went to the place where the dead body was found, rigor mortis had set up, and in his judgment the deceased had been dead twelve to fifteen hours.

Appellant's wife testified that the deceased made an assault on her. Appellant's attorney was examining her with reference to the injuries she claimed she received at the time when this occurred:

"Q. And was this place—I came up there in a few days?

"A. Yes sir.

"Q. And was that place still on your leg?

"By The Court: Are you going to testify?"

The solicitor interposed an objection to a question, and the court stated: "Overruled. I think he is killing time, but go ahead and answer."

Mrs. Ed Earnest was introduced as a witness for the defendant. After she had given testimony that covered two pages of transcript pages, the record shows this:

"Q. Do you remember anybody else that passed in a model A that day?

"A. No sir.

"By The Court: Mr. McCollum, this lady doesn't know a thing about this case."

The following occurred during the examination of one of defendant's character witnesses:

"Q. Did you know his general reputation for peace and quietude? Is it good or bad?

"A. I never heard nothing bad about him.

"By The Court: Did you know his general reputation for peace and quietude?

"A. At that time.

"Q. Was it good or bad?

"A. It was good.

"Q. Did you ever hear anything bad about it for peace and quietude prior to that time?

"By Mr. Strawbridge: Object.

"By The Court: I'll let you ask it, but I think it's taking up unnecessary time."

On several occasions during the progress of the trial when the defendant was tendering his evidence or on cross examination of the State's witnesses, the court ex mero motu directed witnesses not to answer the question.

In each of the instances we have copied from the record, counsel for appellant excepted to the remarks of the court. Motion for a mistrial was also made in a few cases. The questions are also before us by a motion for a new trial.

The practical and logical approach to the matter in hand, as we view it, is to consider the various incidents together in an effort to determine whether or not, in their cumulative effect, they created an atmosphere fatal to the fairness of the rights of the accused.

In our original opinion we quoted a statement by Presiding Judge Bricken, which we took from the opinion in Dennison v. State, 17 Ala.App. 674, 88 So. 211. We again call attention to this very forceful and timely pronouncement.

We may here appropriately add that an attorney is an officer of the court. As such he has a duty to cooperate with the trial judge in every way, to the end that the case in which he is engaged as counsel may not be unduly ladened with immaterial and irrelevant matter. He is also enjoined by the tenets of his noble profession to conduct himself throughout the proceedings in such manner that dignity, respect for the court, and decorum may prevail. A failure in this respect does not only cast blame and reflection upon the legal profession, but it seriously hinders and retards the well ordered administration of our laws.

To go into an extended discussion of the matters of instant concern would not be beneficial nor helpful. Nothing could be gained by any attempt to collate the incidents to the familiar doctrines that declare the safety and security of the due administration of our criminal laws. It all may be summed up in this: Every person who is called upon to defend a criminal charge which is made against him, either

by indictment or complaint, is entitled to a fair, impartial trial in consonance with the rules of law which govern our proceedings in criminal cases. If the courts fail in this, the constitutional, yea, also the human, rights of an accused have been destroyed.

■ Appellate review of alleged infractions of these fundamental rights must be taken from facts reflected in the record and fair and reasonable inferences to be drawn therefrom. So, in the instant case, we make no charge that the trial judge or any one of the attorneys engaged in the trial was intentionally or purposely unfair or unjust to the accused. We cannot escape, however, the inevitable conclusion that on account of the many unfavorable occurrences throughout the progress of the trial the rights of the defendant were not made sufficiently safe and secure. We hold, therefore, that the judgment of the lower court must be reversed.

We have confined our search for authorities to criminal cases which have been decided by our State appellate courts. The following have reviewed and treated the instant matter in its various aspects: Williams v. State, 18 Ala.App. 573, 93 So. 284; Holland v. State, 24 Ala.App. 199, 132 So. 601; Parrish v. State, 139 Ala. 16, 36 So. 1012; Bolton v. State, 23 Ala.App. 470, 127 So. 255; Rigell v. State, 8 Ala.App. 46, 62 So. 977; Powell v. State, 20 Ala. App. 606, 104 So. 551; Holmes v. State, 22 Ala.App. 373, 115 So. 849; McIntosh v. State, 140 Ala. 137, 37 So. 223; Burns v. State, 226 Ala. 117, 145 So. 436; Black v. State, 24 Ala.App. 433, 136 So. 425; Pate v. State, 19 Ala.App. 243, 96 So. 649; Haithcock v. State, 23 Ala.App. 460, 126 So. 890.

■ Some of the State's witnesses were permitted to testify that they observed car tracks which led from one point to another. This was not an infraction of the rule which provides that a witness may not testify to a conclusion. 6 Ala.Dig., Criminal Law, ☞ 459.

■ A witness may be impeached by proof of former statements he made which are inconsistent with his testimony at the instant trial. Franklin v. State, 18 Ala. App. 374, 92 So. 526. This may be made referable to his testimony at a prior trial of the cause. Many of the objections interposed by appellant's counsel relate to efforts on the part of the solicitor to make this proof. We do not find here any rulings of the court that are erroneous.

■ It is true that when a witness admits making the previous contradictory statements opportunity should be afforded him to make explanation or give reasons, if he can, for the inconsistencies. Pollard v. Rogers, 234 Ala. 92, 173 So. 881; Vaughn v. State, 236 Ala. 442, 183 So. 428.

We have given studious consideration to the rulings of the lower court on this point. It appears that in each instance when the solicitor's objections were sustained the questions were not sufficiently specific nor properly framed. The insistences of appellant's counsel fail on this account.

The defendant's wife testified that her son, Paul Quimby, killed the deceased.

■ The rule permits an accused to make legal proof that another committed the offense for which he is charged and which he is called upon to defend. Morris v. State, 25 Ala.App. 175, 142 So. 685; Underwood v. State, 239 Ala. 29, 193 So. 155.

■ In support of this contention the defendant introduced a witness who testified that he saw Quimby after the body of the deceased was found. Many questions were propounded to the witness relating to what he observed about Quimby on this occasion. Among them were: "Did you see some bloodstains, in your judgment, on his sleeve?" "Was he normal or not?" "Was he nervous or upset?" "Did he appear to be worried?" "Did you see stains on his sleeve or arm?"

It is not made certain by the record when this was in relation to the time of the alleged homicide. Apparently it was two, three, or four days subsequent. Because of the remoteness in point of time, if for no other reason, the answers to the questions were properly disallowed.

■ In support of defendant's effort to prove an alibi one of his witnesses was asked: "Was he gone from the house or out of your sight and hearing at any time for as much as thirty minutes?"

The witness testified in this connection that the appellant did not leave in the automobile; that she heard him or saw him at the house practically all the time. The force of this evidence could not have been augmented by a negative answer to the above quoted question. Harris v. State, 8 Ala.App. 33, 62 So. 477; Capital Motor Lines v. Loring, 238 Ala. 260, 189 So. 897.

The same holding is applicable to the rulings on a number of other questions propounded to the same witness.

The record discloses that at prior trials of the cause, Paul Quimby was living. · No claim was then made that he killed the deceased. Quimby died afterward, but prior to the occasion of trial of the case at bar.

■ In view of this situation and circumstance, we hold that the solicitor was privileged in his argument to the jury to make this statement: "If Paul Quimby was alive he would testify he was innocent. They waited until after he was dead to pin this on him."

Without the factual background here disclosed, the assertion would have been unauthorized. Mitchell v. State, 28 Ala.App. 119, 180 So. 119.

The other questions, relating to objections to arguments of attorneys, do not merit comment.

We come finally to consider the· written instructions which were refused to appellant.

■ Charge 1n was covered by given written charge number 1m. Title 7, Sec. 273, Code 1940.

■ Refused charge 1e is predicated on an unsupported premise. There was evidence in addition to that of the witness Jordan Hankins that tended to establish the guilt of the accused. Baggett v. State, 33 Ala.App. 591, 35 So.2d 576; Powell v. State, 20 Ala.App. 606, 104 So. 551.

■ Charges 1h, 1i, 1j, 1k, 1l, and XXXX are each abstract. Street v. State, 67 Ala. 87; Scott v. State, 15 Ala.App. 267, 73 So. 212.

Refused instruction 1g was approved in the following cases: Gregg v. State, 106 Ala. 44, 17 So. 321; Smith v. State, 68 Ala. 424; Williams v. State, 114 Ala. 19, 21 So. 993. In Brown v. State, 142 Ala. 287, 38 So. 268, the Gregg and Williams cases, supra, were specifically overruled in relation to the instant charge. In several cases that have followed, our appellate courts have approved its refusal. See Snyder v. State, 145 Ala. 33, 40 So. 978; Hill v. State, 210 Ala. 221, 97 So. 639; Clayton v. State, 23 Ala.App. 150, 123 So. 250; Walters v. State, 24 Ala.App. 370, 135 So. 600.

■ The offense in question is susceptible of joint commission. Charge 1o, therefore, was refused without error.

Charge number 10 was approved in Yorty v. State, 11 Ala.App. 160, 65 So. 914. In the instant case it was substantially covered by the oral charge and given written instructions. Authority, supra.

■ Refused instructions numbered 100 and 101 each give undue emphasis to only a fragmentary portion of the evidence. Ray v. State, 248 Ala. 425, 27 So.2d 872; Walker v. State, 33 Ala.App. 614, 36 So.2d 117.

With the risk of extending this opinion to undue length, we have attempted to respond to all questions of material moment. We frankly confess that to have included many of these matters in our original opinion would have been more in conformity with good order and regularity. ·

The judgment of the court below is ordered reversed and the cause remanded.

Reversed and Remanded.