90 So.2d 96

Ralph Dean BRADFORD

v.

STATE.

6 Div. 45.

Court of Appeals of Alabama.

Oct. 16, 1956.

Jones & Jones, Beddow, Gwin & Embry and Barber & Barber, Birmingham, for appellant.

John Patterson, Atty. Gen., for the State.

BONE, Judge.

This appellant's jury trial on an indictment charging murder in the first degree resulted in his conviction of manslaughter in the first degree and a sentence of imprisonment in the state penitentiary for a term of ten years.

Appellant's attorneys contend, the record confirms, and this court agrees that the issues presented as to the guilt or innocence of the appellant were clearly for the jury to decide under the theory of self-defense.

There were four witnesses who testified that they were eyewitnesses to the incidents and circumstances surrounding the actual shooting made the basis of the charges embodied in the indictment against the appellant. One was the wife of the deceased, another a friend and employee of the deceased, and the third was a witness called by the State.

One David Earl Trammell, the fourth witness, was the only one of the four testifying on behalf of the appellant. There was direct conflict between the testimony of Trammell on direct examination and the testimony of the other three witnesses. The testimony of Trammell on direct examination, if believed by the jury, corroborated the testimony of the appellant with respect to the evidence surrounding and leading up to the shooting and made out a case of self-defense. During cross-examination Trammel was asked twice if he did not tell Mr. Troy Tate that he was not at the scene of the homicide, and in both instances the witness answered in the affirmative.

On redirect examination of Trammell the following transpired:

"Q. (By Mr. Beddow): When Mr. Tate came to your brother's home was he at home? A. Yes, sir.

"Q. What did he have on? A. A gun.

"Q. Did you know he was an officer of the law? A. Yes, sir.

"Q. Had you heard that Jack Tate was his nephew? A. Yes, sir.

"Q. Now, were you afraid when Troy came there?

"Mr. Deason: Wait a minute. We object to that.

"The Court: Yes, sustain the objection.

"Mr. Beddow: We except.

"Q. I will ask you this question: Why did you tell him that you were not there?

"Mr. Deason: Don't answer that. We object to that, if the court please.

"The Court: Sustain the objection.

"Mr. Beddow: We except. Judge, I will call your attention to the case of Williams v. The State of Alabama, if this boy told Tate he wasn't there and didn't see anything, I think we have got a right to show the circumstances, that he was afraid, Troy Tate was armed, he knew this boy was kin to him, he knew he was his uncle, and we offer to show he was afraid.

"Mr. Deason: We object to that, if the court please.

"The Court: I have already ruled.

"Mr. Beddow: We except.

"Mr. Deason: Wait a minute, Roderick.

"The Court: Don't consider any of it, gentlemen.

"Mr. Deason: All right.

"The Court: Don't consider that for any purpose whatsoever."

Appellant's attorneys contend that: "Where, upon cross examination of the witness, he admitted having made statements which are contradictory to his testimony, he may on re-direct examination show what his motive or reason was for having made the statements even though his testimony is of an uncommunicated mental state."

Dean Wigmore states the rule in the following words: "The impeached witness *may always* endeavor to explain away the effect of the supposed inconsistency by relating whatever circumstances would naturally remove it." (Emphasis supplied.) 3 Wigmore on Evidence, 1044, p. 737 (3rd Ed. 1940).

Mr. Greenleaf says: "Common justice requires that, first calling his attention to the subject, he should have an opportunity to recollect the facts, and, if necessary, to correct the statements already given, as well as by a re-examination, to explain the nature, circumstances, meaning and design of what he is proved elsewhere to have said." 1 Greenleaf, Evidence, Sections 462, 467.

Mr. Justice Haralson cites Mr. Greenleaf with approval, saying: "And, touching the same principle, this court has heretofore held, that he may be asked what induced him to give to the person to whom he made the communication, the account of it which, on cross examination, he admitted he gave." Johnson v. State, 102 Ala. 1, 16 So. 99, 106.

This State is so strongly committed to the rule stated by Dean Wigmore and Mr. Greenleaf that our singular doctrine that one may not testify to his own state of mind is held not to affect such explanation. Campbell v. State, 23 Ala. 44; Johnson v. State, supra; Henry v. State, 107 Ala. 22, 19 So. 23.

One hundred and three years ago Chief Justice Chilton said: "It is a well established rule of law, that where a witness has been cross examined respecting his former statements with a view of impairing his credit, the counsel who called him has the right to re-examine him, so as to afford him an opportunity of explaining such statements, and it is also said by the same authority that he may be asked what induced him to give to the person or persons to whom he made the communication the account which he has stated in the cross examination." Campbell v. State, 23 Ala. 44, 76.

The principle involved, testimonial rehabilitation, is not only the law of Alabama, but it is elementary hornbook law as well. A Student's Textbook of the Law of Evidence, Wigmore, Sec. 175 (1935 Ed.).

Both the Supreme Court and this court have had occasion to reaffirm the rule in recent years. Ingram v. State, 252 Ala. 497, 42 So.2d 36; Stephens v. State, 252 Ala. 183, 40 So.2d 90; Williams v. State, 34 Ala.App. 253, 39 So.2d 29, certiorari denied 251 Ala. 397, 39 So.2d 37.

Seneca once said: "He who decides a case without hearing the other side, though he decide justly, cannot be considered just." He might have added that where one side only is heard it is highly unlikely that the

case will be decided justly. In the instant case the reason for the rule is well illustrated. The denial of the right to rehabilitate the witness could well have been the reason for the adverse verdict.

Ever mindful of Canon 5 of the Professional Ethics of the American Bar Association, which reads in part, "The primary duty of a lawyer engaged in public prosecution is not to convict, but to see that justice is done", and taking into consideration both the elementary principle involved and the expense involved in appealing a case, we are frankly shocked that error was not confessed by the prosecuting officers in this cause.

For the error of the court below in sustaining the objection of the State to the appellant's attorney's questions on redirect examination, the judgment is reversed and the cause remanded.

Reversed and remanded.

HARWOOD, P. J., and PRICE, J., concur in the conclusion.