54 So.2d 613

**NEAL v. STATE.**

3 Div. 926.

Court of Appeals of Alabama.

June 12, 1951.

Rehearing Denied June 29, 1951.

H. C. Rankin, Brewton, Frank G. Horne, Atmore, and Tolbert M. Brantley, Monroeville, for appellant.

A. A. Carmichael, Atty. Gen., and Wm. N. McQueen, Asst. Atty. Gen., for the State.

PRICE, Judge.

The indictment charged in four counts the two offenses of grand larceny and buying, receiving, concealing, etc., stolen property. The jury returned a general verdict of guilty and the defendant was sentenced to imprisonment in the penitentiary for five years.

The State contended that several cows were missing from the State Prison Farm at Atmore in November or December of 1948, and that two of said cows were found in defendant's barn about three weeks later. Howard Tullis, who was employed by defendant, testified for the State to the effect that the two cows were brought to defendant's barn on a Monday night by Curtis McGee, and that next morning a Jersey cow with long hoofs and a black butt headed cow were in another stable in the barn. He further testified that defendant trimmed the hoofs of the Jersey cow and sent her to the bean patch and sold the butt headed cow to Houston Wolf for butchering. The State contends the Jersey cow was later found on a creek halfway between the State Farm and Bell's Fork.

The defendant contended that during the time in question he was working in Blountstown, Florida, which was 228 miles from Atmore. That he left Alabama on the 2nd day of November and was not in Escambia County on a week-day until Christmas week. That he returned to Atmore on the 19th of November and again on the 3rd of December. That both of said dates fell on Saturday and that he arrived home after dark and left again the next day.

He denied that he ever trimmed a cow's hoofs or that he sold any cows belonging to the State Farm. He insisted he sold to Houston Wolf a wild cow whose leg had been broken by a train and that the cow he sent to the bean field was his personal milk cow and she is still there. He denied that he had any arrangement with anyone to deliver cattle to his barn. He stated that he owned 100 head of cattle at that time.

He testified that on the night the Sheriff came he had returned from Florida around

158

10:00 o'clock and gone to bed and did not know the cows were there until he went to the barn with the Sheriff.

On cross-examination appellant propounded questions to Sheriff Fountain and State's witness Hale in an attempt to show statements made by appellant at the time the cows were discovered in his barn. The court sustained the State's objections to these questions and the defendant excepted. These declarations of the defendant were admissible as explanatory of his possession of the stolen property and the court erred in sustaining the State's objections to the questions.

In the case of Henderson v. State, 70 Ala. 23, the court held: "The rule is well established, that the recent exclusive possession of the fruits of crime, soon after its commission, is prima facie evidence of guilty possession. 1 Greenl.Ev. 34. Yet, if the party, at the time he is found in possession of the stolen property, and before he has had the opportunity to concoct evidence exculpatory of himself, give a reasonable and probable account of the manner in which he became possessed of the property, this evidence should always be allowed to go to the jury, so as to rebut the presumption of guilt which might otherwise arise." See also Hawes v. State, 216 Ala. 151, 112 So. 761; Smith v. State, 103 Ala. 40, 16 So. 12; Watkins v. State, 31 Ala. App. 486, 18 So.2d 805, certiorari denied 246 Ala. 100, 18 So.2d 806; Bryant v. State, 116 Ala. 445, 23 So. 40; Bivins v. State, 24 Ala.App. 373, 135 So. 603.

The record recites the following colloquy between the court and defendant's counsel during the trial:

"Mr. Aubrey Brantley was called as a witness for the defendant, when the following took place:

"The State: (By Mr. Elliott). If the Court please, the rule was invoked and I understand that this witness has been in the Court room during a part of the progress of this trial, and the State objects to his testifying.

"The Court: Have you been in the Court room listening to the witnesses in this case?

"Mr. Brantley: Yes, sir.

"Mr. Horne: I wish to go back a little— we were compelled to go to trial without a thorough examination—

"The Court: Listen. You had a fair deal in this and don't you insinuate that you have not, young man. I am not going to stand for that kind of talk.

"Mr. Horne: I'm sorry if I hurt your feelings. I can talk to you privately and explain to you—

"The Court: You gentlemen (speaking to the jury) I will excuse you for a few minutes—

"(Reporter's Note: The jury did not leave their seats but remained during following)

"Mr. Horne: If you will permit, I will talk to you privately and explain—

"The Court: Have a seat there and don't you ever do that any more young man. I have always given the defendant a fair and impartial trial and I won't have any insinuations that I have not.

"Mr. Horne: You certainly have and I am not saying you have—

"The Court: You insinuated that I didn't.

"Mr. Horne: No I haven't, your Honor.

"The Court: I ought to send you to jail. Where's the Sheriff.

"Mr. Horne: We except to the remarks of the Court."

Appellant strongly insists that this reprimand of counsel by the court injuriously affected his rights and should work a reversal of this cause.

We are of the opinion that the remarks of the court and his threat to arrest defendant's counsel, made in the presence and hearing of the jury, were clearly improper and prejudicial to the interest of the defendant.

Complaint is also made in defendant's brief that the general attitude of the Judge throughout the trial was such that it tended to show impatience with defendant and his counsel to such a marked degree that it could not have escaped the attention of the jury, and insists that his case should not have been burdened with the extraneous remarks on the part of the Judge. One of the

instances complained of being at the time the case was called for trial and defendant announced the absence of two of his witnesses, whereupon the court stated "I sent for them and I will get them here if gas will burn." Later, on cross-examination of a State's witness, the following occurred:

"Q. Don't you frequently get so drunk you can't remember what you did and what happened? A. I ain't never been that way out there at Mr. Neal's.

"Q. I will ask you to answer my question.

"The Court: He answered it pretty fair.

"Mr. Horne: We except to the remark of the court that 'he answered it pretty fair.'

"The Court: I think he did."

Other incidents of similar nature appear in the record, but no exceptions were reserved on the trial, nor were they made a ground of motion for a new trial.

 We are of the opinion that there is some merit in appellant's contention. We quote from an opinion of this court by Judge Bricken in the case of Dennison v. State, 17 Ala.App. 674, 88 So. 211, 213, which ably expresses our views in the instant case: "That a trial judge wields a great influence upon the jury cannot be questioned, for it is their duty to follow his instructions as to the law. So, whenever he expresses an opinion on any disputed fact, or of the character of a witness, or compliments one attorney at the expense of another, or uses language which tends to bring an attorney into contempt before the jury, or uses any language or makes any intimation which tends to prejudice them, he commits an error of law, which would, of necessity, effect a reversal of the judgment and a remandment of the cause." See also Williams v. State, 34 Ala. App. 253, 39 So.2d 29; Holland v. State, 24 Ala.App. 199, 132 So. 601; Griffin v. State, 90 Ala. 596, 8 So. 670; Williams v. State, 18 Ala.App. 573, 93 So. 284; Moulton v. State, 199 Ala. 411, 74 So. 454; Powell v. State, 20 Ala.App. 606, 104 So. 551; Kabase v. State, 31 Ala.App. 77, 12 So.2d 758.

It was competent for the State to question the witness Hixon as to the condition of the ground at the gate of the pasture from which the cattle were missing, and there was no motion to exclude the answer of the witness which defendant insists was objectionable.

The statement of witness Blackman that "the outside of the gate had been swept off good and clean" was merely a shorthand rendition of facts.

There are other questions presented by the record which will probably not recur in the event of another trial and to which we have not here responded.

For the errors pointed out the judgment is reversed and the cause remanded.

Reversed and remanded.