**JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Appellant,**

v.

**Wanda A. WELSH, Appellee.**

**No. 17379.**

United States Court of Appeals
Fifth Circuit.

May 27, 1959.

Drayton T. Scott, Birmingham, Ala., Cabaniss & Johnston, Birmingham, Ala., of counsel, for appellant.

Andrew W. Griffin, Birmingham, Ala., Griffin & Wilson, Birmingham, Ala., of counsel, for appellee.

Before RIVES, TUTTLE and CAMERON, Circuit Judges.

CAMERON, Circuit Judge.

The question of law presented to the court below and to us is whether an

amendment to a group life insurance policy increasing the coverage from $5,000 to $10,000 became effective on June 1, 1957, as stated in the first line of the amendment; or on April 26, 1957 when the employer of John W. Welsh, III, hereinafter called insured, elected to be covered by the plan which, on Sept. 6, 1957, was executed as an amendment to the group policy. Appellee Wanda A. Welsh, beneficiary of the insured, claimed that the increased insurance was applicable as of April 26th and therefore covered the insured, who entered the hospital May 18 and remained there continuously until his death June 17, 1957. Appellant insurance company claimed that the amendment to the policy was effective June 1, 1957 and covered only those employees who were actively at work on that date. It admits liability for $5,000 with interest under the terms of the original policy, while appellee insists that she is entitled to recover $10,000 and interest under the terms of the amendment. The court below, considering the terms of the original policy and of the amendment in the light of the course of dealing between the insurance company, the Trustee for the group and insured's employer, awarded judgment for the increased amount provided by the amendment. From this judgment this appeal is prosecuted.[1]

1. The undisputed facts upon which the lower court's judgment was based are accurately set forth in its opinion, part of which is as follows:

"This is a suit upon a group insurance policy issued by the defendant to the Trustees of National Stationery and Office Equipment Association Group Insurance Fund. The insured's employer, J. W. Welsh Company, became a participant in this group plan effective July 1, 1953. The controversy concerns Part V of Amendment No. 33, and particularly Section (5) thereof. Part V is in form and language as follows:

" 'Part V.
" 'Schedule of Insurance.
" '(1) Effective as of June 1, 1957 the Schedule of Insurance set forth below, which shall be known as Plan A, is added to and made a part of said Policy.

" 'Schedule of Insurance—Plan A.

\* \* \* \* \* \* \* \* \* \* \* \* \*

" 'Coverage

| " 'Life Insurance | Class A | Class B | Class C | Amount of Insurance Class D | Class E |
|---|---|---|---|---|---|
| | $10,000 | $2,500 | $5,000 | $1,500 | $2,000 |

\* \* \* \* \* \* \* \* \* \* \* \* \*

" '(2) Contributing Employers who are participants in the insurance program under said Policy on June 1, 1957, may elect to have their employees insured in accordance with Plan A provided they make such election on or prior to June 1, 1957.

" '(3) Employees of Contributing Employers who are participants on June 1, 1957 and who do not elect to have their employees insured in accordance with Plan A, and employees of Contributing Employers who become participants on July 1, 1957 shall be insured in accordance with the Schedule set forth in Part V of Amendment No. 16 to said Policy which shall be known as Plan B.

" '(4) Contributing Employers whose employees are insured under Plan B and who elect after July 1, 1957 to have their employees become insured under Plan A may make such election

" '(a) on any subsequent anniversary of the Policy, or

" '(b) on the first day of any policy month subsequent to July 1, 1957 provided that the Company may require satisfactory evidence of insurability, without expense to the Company, of such employees.

" '(5) The insurance under Plan A of an eligible employee whose Employer makes such election shall become effective on the date of such election, provided the employee is actively at work on such date.

" '(6) The insurance of an employee who is required to furnish evidence of insurability shall become effective on the

The court below decided the case as if it were submitted upon stipulation and presented only a question of law, and the

date of approval by the Company at its Home Office of evidence of insurability provided he is then actively at work.

" '(7) The insurance of an employee who is not actively at work when it would otherwise become effective shall become effective on the date he returns to active work.

" '(8) Employees of Contributing Employers who become participants after July 1, 1957 shall be insured in accordance with Plan A.

" 'Except as stated in this amendment, nothing contained herein shall be held to alter or affect any of the provisions of said Policy including any prior amendments.'

"It is undisputed that on April 26, 1957, the employer, J. W. Welsh Company, made its election to participate in this new plan which provided additional insurance for its employees. On that date the insured, J. W. Welsh, was actively at work. Beginning on May 18, 1957, and continuing to the date of his death on June 17, 1957, the insured was confined in St. Vincents Hospital in Birmingham. Plaintiff, suing as beneficiary, claims that the insurance as to the insured became effective on the date of the election by the employer in accordance with Section (5) of Amendment 33. The defendant claims that the individual insurance did not become effective until June 1, 1957, at which time it asserts the insured was not 'actively at work' on that date.

"At the pretrial conference, the parties stipulated that the Court would construe the policy for the purpose of determining the effective date of the increase in coverage as to the insured. Both parties have made motions for summary judgment on the issue as to the construction of the policy. The pleadings, the affidavit of Mildred Lester with attached exhibits, and the master policy with the amendments thereto, present this issue and all the evidence that is available thereon. The Court construes the stipulations as contemplating a determination of this issue as fully and with equal binding effect to the same extent as if the Court was trying said issue on the merits, and that the parties have employed as the vehicle for accomplishing this objective their respective motions for summary judgment.

"Except for the effective date of the Schedule of Insurance, some additional

parties before us concede that this course was the proper one. The court adverted to the fact that appellee contended that

details as to the classifications of the employees, and the extension of additional coverage, Section (1) of Part V of Amendment No. 33 is the same as Part V of Amendment No. 16, which was affixed to the policy on September 13, 1955.

"Section (T), page 2, of the General Provisions of the original master policy contains the following provisions:

" 'Effective Dates of Individual Insurance of Employees. The insurance of an employee who is eligible on the effective date of this Policy shall become effective on said date, provided he is then actively at work.

" 'The insurance of an employee who becomes eligible after the effective date of this Policy shall become effective on the date he becomes eligible, provided he is then actively at work.

" 'The insurance of an employee who is not actively at work when it would otherwise become effective shall become effective on the date of his return to active work.'

"It is observed that these provisions deal with the effective dates of Individual Insurance of Employees and that Sections (5), (6), and (7) of Part V. of Amendment No. 33 purport to deal with the same matter, but with significant changes. Sections (2), (3), (4) and (8) first appear in Amendment No. 33.

"Negotiations for this additional coverage were first initiated by one of the Trustees of the Fund with insured's employer by letter of April 18, 1957, in which no mention was made of either the effective date of the Plan or of the Individual Insurance. By letter of April 22, 1957, from the Trustee to the employer it was stated that arrangements had been made with John Hancock Mutual Life Insurance Company to make the 'program' effective as of June 1, 1957. Attached to this letter was a form for the making of the election by the employer. The executed form does not indicate the effective date of the New Plan other than to state that the employer wished to change its participation 'as outlined in the letter accompanying this form.'

"On May 28, 1957, the Trustee wrote the employer stating that: 'On June 1, 1957, the increased insurance coverage under the NSOEA Group Trust Insurance Fund selected by you becomes effective.' The sender enclosed a rider

the rights of the parties were governed by the contracts of insurance and the applications therefor and that extraneous evidence should not be considered, but it adopted the position of appellant that Amendment 33, considered with the master policy, presented an ambiguity which permitted the consideration of the extraneous proof mentioned in the statement of facts. Its conclusion was based upon the contracts themselves interpreted in the light of this extraneous evidence. In the arguments before us the appellant contends that the language of the amendment is ambiguous and that the court below was justified in considering the negotiations between the trustees of the group and the insurance company in reaching its decision.[2]

The appellee guardedly concedes that it was agreed in the pretrial order that there was ambiguity in Amendment 33, and contends that such an ambiguity in an insurance contract must be resolved in favor of the insured. The extraneous evidence was introduced without objection and neither party argues that its consideration by the trial court constituted error.

We think that, reading Amendment 33 as a whole and giving effect to all of its provisions, the more logical conclusion is that Section (5) was intended by the parties to relate to the clauses immediately preceding it, that is, to contributing employers whose employees might elect to bring themselves under the increased coverages *after July 1, 1957*. This construction is heavily buttressed by the negotiations between the Trustee and the insurance company which led to the issuance of Amendment 33 [3] which amendment began with the words "Effective as of June 1, 1957, the schedule of insurance set forth below, which shall be known as Plan A, is added to and made a part of said policy."

The parties first mentioned the effective date of the proposed amendment in a communication mailed April 22, 1957 by the Trustee to all participating employers where it was stated that the vast majority of employers were favorable to the plan and that, as to all who desired to come under it, the plan would be effective June 1, 1957. Following that, on May 28, the Trustee sent a letter to insured's employer stating that the increased coverage would become effective "on June 1, 1957," and in that communication riders were enclosed, which the employer was to give to each employee, and the rider appearing in evidence stated on its face that the increased benefit from $5,000 to $10,000 would be effective June 1, 1957, "provided you are then actively at work." The premiums paid by insured's employer through the month

---

to be attached to the individual certificates. The rider refers to the effective date as June 1, 1957. Beginning June 1, 1957, the monthly premium of the employer on the insured employees was increased from $13.00 to $24.00.

"The rider to be attached to the individual certificates was executed by the defendant prior to June 1, 1957. With knowledge that this certificate was outstanding, the defendant executed Amendment No. 33 on September 6. Although the certificate and rider are not a part of the policy, if the latter is to be considered, it would appear that it was superseded by Section (5) of Amendment No. 33."

2. Appellant's position is thus stated in its brief: "Where the language of a policy or an amendment to a policy is ambiguous, resort may be had to the facts and circumstances surrounding the execution of the policy or amendment to determine the true intent of the parties. * * * The lower court correctly held that it had a right to examine all of the preliminary correspondence and all other circumstances in order to determine the true intent of the parties since there was a definite ambiguity, or in fact, completely contradictory paragraphs, in the amendment."

3. Where the terms of a written instrument are contradictory, ambiguous or inharmonious, extraneous evidence is admissible to aid the court in arriving at the true intent of the parties as it is expressed in the words they used. Cf. Fidelity-Phenix Fire Ins. Co. v. Farm Air Service, Inc., 5 Cir., 1958, 255 F. 2d 658, and cases cited.

of May, 1957 were based upon a $5,000 benefit to the insured and beginning as of June 1st premiums were paid on the basis of the increase to $10,000.

It is agreed, as shown above, that the insured was not actively at work on June 1st, but that he had entered the hospital May 18th and remained there until his death June 17, 1957.

It seems clear to us that the parties intended that the amendment should be effective June 1, 1957, and would cover only employees actively at work on that date. Miller v. Liberty National Life Ins. Co., 1942, 243 Ala. 250, 9 So.2d 132; Montgomery Enterprises v. Empire Theater Co., 1920, 204 Ala. 566, 86 So. 880, 19 A.L.R. 987; and Ward v. State Farm Mutual Automobile Ins. Co., 5 Cir., 1957, 241 F.2d 134, 137, and cases therein cited.

The judgment of the district court is reversed and the cause is remanded for entry of judgment in favor of appellee for $5,000 and interest.

Reversed and remanded.

Hutcheson, Chief Judge, dissented.