114 So.2d 286

**Edward David NIX**

v.

**STATE.**

**6 Div. 698.**

Court of Appeals of Alabama.

June 9, 1959.

Rehearing Denied June 23, 1959.

Hugh Beaird and T. K. Selman, Jasper, for appellant.

MacDonald Gallion, Atty. Gen., and Robt. C. Dillon, Asst. Atty. Gen., for the State.

CATES, Judge.

Nix appeals his conviction of carnal knowledge, for which he has been sentenced to five years in the penitentiary.

August 12, 1958, was the date of judgment. On the same day, Nix filed a motion for a new trial with the Circuit Clerk of Winston County. October 8, 1958, the trial judge denied the motion. December 8 the court extended for "an additional thirty days to January 7, 1959" the time for filing the transcript of the evidence. The court reporter filed this transcript with the circuit clerk one day late, viz., on January 8, 1959.

Since the trial judge lives in another county, Code 1940, T. 13, § 119, affords the movant sixty days from judgment to present the motion for a new trial if, within the first thirty days, he has filed the motion with the proper circuit clerk.

The motion had an endorsement appended purporting to continue the hearing to September 10, 1958, but it bears no signature of the trial judge, though its form calls for his signature. This unsigned endorsement is a nullity. Therefore, when the motion was presented to the trial judge on October 8, 1958, this was the first time the matter was before him, and was within the sixty days given by § 119. In this construction, we follow Montgomery Production Credit Ass'n v. M. Hohenberg & Co., 31 Ala.App. 117, 12 So.2d 865, and American Life Ins. Co. v. Anderson, 246 Ala. 588, 21 So.2d 791.

The Attorney General has moved that the entire record or the transcript of the evidence be stricken because of Nix' failure to comply with Revised Rule 37 of the Supreme Court, Code 1940, Tit. 7 Appendix. All grounds of the motion are based on the trial judge's supposedly having signed the proposed order continuing the hearing for a new trial to September 10, 1958. We find nothing in the record to show the trial judge ever saw the motion before October 8.

No ground mentions the filing of the transcript of evidence in the circuit clerk's office one day late; hence this point of objection is waived.

The State's motion to strike is overruled. This ruling does away with considering the appellant's motion to strike the motion to strike.

The tendencies of the State's evidence were as follows:

About six thirty Sunday evening, September 16, 1956, Nix, who had been drinking, forced his thirteen year old stepdaughter to drive with him some two miles to a lover's lane on what was known as the Bart Hood Road. He forced her to the ground and had sexual intercourse with her.

A neighbor heard the girl's cries and sent for the sheriff.

The girl told the sheriff of being forced to go from home, being driven off and trying to run away before Nix subdued her.

Dr. T. M. Blake, a physician at Double Springs, examined her at the sheriff's request, and corroborated her testimony to the extent of saying that, in his opinion, she had had sexual intercourse the night of his examination.

The sheriff found a "dollar" pocket watch at the scene where the stepdaughter had related she had hidden it when it fell from Nix' pocket.

The defense consisted of evidence of the girl's having retracted her story both before the grand jury and in a written statement made under oath before a notary public.

Nix took the stand in his own behalf and denied any sexual relations with the girl at any time. He attributed her accusation to envy of the supposed better treatment given her younger half brothers and sisters.

During the State's cross-examination of the notary public, C. L. Teppenpaw, who had taken the girl's oath on recanting her accusation, the following occurred:

"Q. And you knew the grand jury was going to investigate the case, and knowing all this, you took a statement down there already prepared and tell this child to sign it? A. At that time I was a Notary Public, and I would have done the same thing for you if you had asked me to do it.

"Q. Well, we took your word for it and that is the reason why we didn't indict you.

"Mr. Beaird: Now we object to that statement, and move for a mistrial.

"The Court: I deny the motion. This witness admits he took a statement for a little child to sign and brazenly tells the Court that it is a legal document. In my mind he is an accomplice to the fact, and if the Solicitor wishes—

"Mr. Beaird: With all due respect to Your Honor, we would like to make a motion for a new trial. Your Honor's statement is highly prejudicial to the defendant and may cause the defendant to be convicted on account of how the Court feels about this particular witness.

"The Court: The remarks were made to the witness and not to the defendant. Motion denied.

"Mr. Beaird: Exception."

Part of the trial judge's oral charge went:

"* * * You are the sole judges of the facts in the case and nobody tells you, and nobody is to even suggest what that is to you, except as to what the law is governing the case. The lawyers in their arguments, what they say in their arguments, is not evidence. And comments back and forth by anybody in the case, the lawyers on both sides, none of that is evidence. The evidence is what you see and hear from the witness stand. * * *"

At the close of the trial, Nix' counsel filed a written motion for a mistrial assigning:

"3. That it was error for the Honorable Judge to make the statement in substance and to-wit, that the witness Tippenpaw did the wrong thing by taking a statement and notarizing same from the prosecutrix and further that Tippenpaw was the same as an accomplice and that the Honorable Judge would let the Solicitor ask him anything the Solicitor wanted to. This being in the presence and in the hearing of the jury and during the trial of this case."

The motion was denied.

Ground 6 of Nix' motion for a new trial raised the same incident as claimed error.

In Hambrick v. State, 39 Ala.App. 418, 102 So.2d 32, a defense character witness, under cross-examination, was dunned by the trial judge for his arrears on a fine. This we consider to be prejudicial error. The opinion pointed out the analogy of the importance of the testimony as illustrated in Louisville & N. R. Co. v. Martin, 240 Ala. 124, 198 So. 141.

Would Mr. Teppenpaw's testimony have generated a reasonable doubt?

Williams v. State, 34 Ala.App. 253, at page 257, 39 So.2d 29, at page 33 (after remandment), was essentially a case of the effect of the judge's frequent caustic remarks to defense counsel piling up to work prejudice.

In Dennison v. State, 17 Ala.App. 674, 88 So. 211, 213 (reversed on other

grounds), Bricken, P. J., used the general language that when a trial judge "expresses an opinion * * * of the character of a witness * * *, he commits an error of law * * * [to reversal]."

In Luker v. State, 39 Ala.App. 548, 105 So.2d 834, 835, as modified 268 Ala. 346, 105 So.2d 845, there were several incidents held to be covered by the curable error doctrine. As in Mabry v. State, Ala.App., 110 So.2d 250, 254,[1] and in McCullough v. State, Ala.App., 113 So.2d 905,[2] an instruction by the court that exchanges between the judge and counsel or among counsel are not evidence can go a long way to remove any appearance of partiality or bias which might arise because a judge, in governing the course of a trial, is under a duty to rule upon contentions made to him.

 This was not the situation here. The solicitor had conducted a vigorous cross-examination and had posed a question which, if not rhetorical, was certainly leading and argumentative and which sought nothing at issue: "Well, we took your word for it and that is the reason why we didn't indict you."

Defense objection to this question should have been sustained.

 Nevertheless, the judge then took Teppenpaw's testimony and gave it a qualitative analysis, e. g., "brazenly tells * * that it is a legal document." More serious was the characterization of Teppenpaw as an accomplice to the fact, which, we think, can be fairly construed as passing on Nix' guilt.

 We find prejudicial error to reversal under the principle expressed in Haithcock v. State, 23 Ala.App. 460, 126 So. 890, where the court cast aspersions upon showings for absent witnesses. Remarks of a judge detracting from the weight of evidence throw a burden on the defense which denies the impartiality our Constitution requires of every trial.

 We cannot apply harmless or curable error because we consider Teppenpaw's testimony, if believed, could have generated a reasonable doubt. Louisville & N. R. Co. v. Martin, supra.

 Over objection the solicitor was allowed, on cross-examination of a grand juror, to ask him if Mrs. Rhoda Jones had not appeared before that body and given such and such testimony.

Mrs. Jones was not a witness before the petty jury. In the event of a second trial, such hearsay should be excluded. This, too, constitutes reversible error.

Reversed and remanded.