200 So.2d 514

**Johnny GRAY, Jr.**

v.

**STATE.**

**6 Div. 193.**

Court of Appeals of Alabama.

April 11, 1967.

Rehearing Denied May 2, 1967.

Dempsey Pennington, Birmingham, for appellant.

Richmond M. Flowers, Atty. Gen., and John C. Tyson, III, Asst. Atty. Gen., for the State.

JOHNSON, Judge.

Appellant was indicted by the Grand Jury of Jefferson County at the June, 1965, Session of the Circuit Court for the offense of the rape of one Jean Marie Edwards. Following a plea of not guilty, appellant was tried and found guilty as charged and punishment was fixed at ten years in the State penitentiary. Hence, this appeal.

The State contends that the alleged crime occurred after 2:00 A.M. on May 29, 1965. Both the appellant and the alleged victim had been to a "social gathering" at one Joe Steel's house, also known as "Baby Love's Place," where sandwiches, beer and whiskey were sold. Appellant had been there since approximately 9:00 P.M. and was present when the alleged victim and her two sisters arrived. Jean Marie and appellant left the place with the alleged victim's sister after midnight going to the sister's house. They returned shortly thereafter to Joe Steel's and left again shortly thereafter for a purpose and a destination the evidence of which is in conflict; Jean Marie stating that she was being walked by appellant to her mother's house and appellant testifying that they were going to a motel or boarding house in Boyles at Jean Marie's suggestion for the purpose of engaging in sexual relations. At the time of this incident the alleged victim was married and the mother of four children. She stated that she had not seen her husband for several days prior to the alleged rape and did not know where he was. Shortly thereafter, they became separated and were separated at the time of the trial.

Appellant contends that Jean Marie voluntarily engaged in intercourse with him and that this was in fact the third such indulgence with her. However, Jean Marie denied any prior relations with appellant and contended that she resisted until forced to yield by main force at the point of a knife. Several defense witnesses testified that they were in close proximity to the school yard where the alleged incident occurred at the time in question, sometime after 2:00 A.M., and that they heard no screams or other outward manifestations of rape. They also testified that appellant and Jean Marie were seen by them entering the school grounds with arms around each other and that no visible force was being used on her.

There was no medical examination of the victim by a physician at any time prior to the trial. No knife was found in the possession of appellant upon his arrest, nor did anyone who saw him enter the school yard with Jean Marie see one. Officer Lewis R. Cockrum who investigated the incident the following morning, testified that Jean Marie had "a swollen lip", a "laceration and skinned place under her left eye", soiled and torn panties, and a soiled dress with "dirt all over the back". Appellant testified that she was unmarked when he left her. The sole material convicting evidence of the alleged rape was the soiled and torn panties, Exhibit A, allegedly worn by Jean Marie on the night in question and allegedly shown by her to her sister and so identified by the police officer she called. No outward trace of any violence was discovered at the school yard.

Jean Marie and her sister both testified that the alleged victim had never known appellant or gone out with him previously and that the sole purpose of her being with him was to be escorted home. Jean Marie also contended that she had had no intoxicating beverages that night and did not drink at all. Alvin Gray, brother of appellant, testified that when he entered Baby Love's establishment he saw Jean Marie sitting in the lap of his brother and that both were drinking beer. Leonard Matthews testified that he was at Baby Love's at the time in question and saw Jean Marie and appellant, along with Jean Marie's sister, sitting together at a table drinking whiskey. Mildred Jean Hatton also testified that she saw Jean Marie sitting in appellant's lap at Baby Love's drinking beer and that Jean Marie had bought and drunk beer several times at the place where she worked. Appellant testified that he

and Jean Marie had drunk together before, prior to sexual relations between them; that at Baby Love's the sister of Jean Marie had asked him to buy them both drinks, which he did; that Jean Marie drank beer and vodka on this occasion; and that on their return to the "tavern", after walking the sister home, they had another beer before going to the school yard.

Appellant's contention that failure to give requested charge No. 8 to the jury was error has no merit and need not be considered here. This was fully covered in the court's oral charge to the jury.

Counsel for appellant contends as a claim of error that appellant was prejudiced in the eyes of the jury by actions of the trial court. He has cited instances of this in his brief. Though these instances showed an argumentative nature between the court and the defense counsel, there was nothing, in the opinion of this court, so great *which was excepted to* that would here be grounds for reversal.

In his oral charge to the jury, the court stated the following:

> "* * * I am sure the State feels that he is guilty. I am sure Mr. Pickens, who prosecuted this case, would say to you as he has that in his opinion the defendant is guilty. It was the State's charge and if he felt the defendant was not guilty he would have nolle prossed the case. He didn't do that, so I'm sure he feels that the indictment is good and well-founded. That is his side of the case."

It is the general rule of law in this State that an exception to an oral charge, taken immediately upon conclusion of the court's charge to the jury, and before the jury retires, is timely made. Shields v. Castleberry, 41 Ala.App. 390, 133 So.2d 516.

The proper way to reserve an exception to a part of the court's oral charge is:

"* * * for the exceptor to select and recite what the court said, or state the substance of what the court said, and thus specifically bring to the attention of the trial court and this court the matter and ruling of which complaint is made. Alabama Power Co. v. Smith, 273 Ala. 509, 142 So.2d 228." McClendon v. State, 278 Ala. 678, 180 So.2d 273.

The record relates that counsel for appellant did in fact object and reserve an exception at the conclusion of the court's oral charge to the jury. He first questioned the statement concerning the "reasonable doubt" of appellant's guilt. The court cured any defect in further defining its meaning at that time. Appellant's counsel further continued to question that portion of the oral charge of the court concerning "the State's opinion" of appellant's guilt. He properly contended that the State as such does not actually have an opinion under the law, but is, or should be, impartial in dispensing justice.

The court attempted to cure the defect cited, and in so doing further more fully prejudiced appellant by saying:

> "Well, if you want it explained that we have a Grand Jury representing the State. I am sure when they asked the Grand Jury to return this indictment that whoever that was, whether Mr. Morgan or Mr. Hawkins, whoever it was, felt justified in asking for the indictment; *and Mr. Pickens certainly argued the case as though he were convinced of the defendant's guilt.* Of course, there are two sides to every case. There is the side of the State charging a defendant, and the side of the defendant denying; and that is the issue made up between the State and the defendant. The State has, if Mr. Pennington wants—*the State has a body. Everybody in the State, and that means me and you and all the rest of the people in the State.* All of you couldn't know anything about these representatives of the State is what that would

imply. Of course, that is about as far as I can go." (Emphasis ours.)

In a long line of cases, this court has consistently followed the principle that prejudice of the appellant in the eyes of the jury is reversible error.

In Dennison v. State, 17 Ala.App. 674, 88 So. 211, this court stated:

"That a trial judge wields a great influence upon the jury cannot be questioned for it is their duty to follow his instructions as to the law. So, whenever he expresses an opinion on any disputed fact, or of the character of a witness, or compliments one attorney at the expense of another, or uses language which tends to bring an attorney into contempt before the jury, or uses any language or makes any intimation which tends to prejudice them, he commits an error of law, which would, of necessity, effect a reversal of the judgment and a remandment of the cause."

See also Williams v. State, 34 Ala.App. 253, 39 So.2d 29; Holland v. State, 24 Ala.App. 199, 132 So. 601; Griffin v. State, 90 Ala. 596, 8 So. 670; Williams v. State, 18 Ala. App. 573, 93 So. 284; Moulton v. State, 199 Ala. 411, 74 So. 454; Neal v. State, 36 Ala.App. 156, 54 So.2d 613; and Nix v. State, 40 Ala.App. 357, 114 So.2d 286.

In Davis v. State, 40 Ala.App. 118, 112 So.2d 353, the court states:

"Where, as here, the extended charge does not cure the error of the original charge to which an exception was reserved, but continues the error, we do not think the failure to again except should be deemed a waiver of the original exception. For, as stated in Long-Bell Lumber Co. v. Stump, 8 Cir., 86 F. 574, 583: 'And, so far from the silence of counsel at the reassertion of the error by the court evidencing a waiver of the first error, it but evinces a respectful deportment by counsel towards the court.'

"Reversed and remanded."

 The reasoning involved in this principle is sound in that the jury cannot help being influenced by the trial court in what he says and *how he says it* since he *is* the trial court. However unintentional the statement made by the court may be, it could influence the jury. In the case at bar it could only impress them *to convict*. The court overstepped its duty when it commented, in its charge to the jury, on how the State and the Solicitor were convinced of the guilt of appellant. In its attempt to cure this defect, the court compounded it further. In effect, the court stated that the State thought appellant guilty and the court's saying "you and I" could only mean "I", the court, think he is guilty. Also and therefore "you must convict."

Because of this error, appellant was prejudiced in the eyes of the jury and this is due to be and the same is hereby

Reversed and remanded.