208 So.2d 449

Earl BENEFIELD

v.

STATE.

5 Div. 677.

Court of Appeals of Alabama.

Oct. 3, 1967.

Rehearing Denied Nov. 14, 1967.

Lewis H. Hamner, Jr., Roanoke; Hooton & Hooton, Roanoke, on rehearing, for appellant.

MacDonald Gallion, Atty. Gen., and Robt. F. Miller, Asst. Atty. Gen., for the State.

PRICE, Presiding Judge.

Earl Benefield was found guilty of the larceny of an automobile belonging to Marcille Benefield, his former wife.

The state's evidence tends to show that Earl and Marcille were divorced in May of 1966 and that the divorce was obtained at Earl's insistence. The parties were the parents of four minor children. As a part of the alimony settlement Earl gave to Marcille a bill of sale to a 1963 model Buick automobile; that Marcille refused to sign the divorce papers until the bill of sale was signed by defendant. The bill of sale was prepared under defendant's instructions by Charlene Calhoun, defend-

ant's office helper. This instrument was introduced in evidence and appears in the record as State's Exhibit I. The price of the automobile is listed at $2500.00, and the testimony shows its value as $2200.00 or more.

The divorce was granted in May 1966. On July 19, 1966, defendant, who operated a used car business, and his employee, James Bassett, brought a Chevrolet Malibu automobile and left it at Marcille's home. They drove the Buick away over the protests of Marcille.

The evidence for defendant tends to show that he can neither read nor write; that in May, 1966, he went with Marcille to the office of an attorney to discuss the matter of a divorce; that an agreement was reached whereby he would continue to furnish Marcille and the children dependable transportation as he had in the past, so long as she remained unmarried, and he would allow her to continue to use the Buick that was already in her possession; that she asked for some kind of "identification" to use while she was driving the car.

The defendant's evidence further shows that the Buick automobile belonged to the Bank of Wadley, Wadley, Alabama; that appellant had owned the car and sold it to one Bobby Benefield, who financed it through the Bank of Wadley; that the bank had repossessed the car and placed it on defendant's used car lot for sale by Earl Benefield as the bank's agent; that when it was brought to the bank's attention that the car was in Marcille's possession the bank instructed Earl to place the car back on his lot.

In rebuttal Marcille Benefield testified that at the time she signed the answer and waiver in the divorce case she did not know of the existence of a mortgage or other encumbrance against the automobile or any debt due the Bank of Wadley.

■ The evidence presented a question for the jury to determine as to whether the taking of the automobile was done with a felonious intent, or whether the taking was under a bona fide claim of right, and was sufficient to sustain the verdict. The motion for a new trial was properly refused. Ruffin v. State, 30 Ala. App. 344, 6 So.2d 455, cert. den., 242 Ala. 345, 6 So.2d 456.

The court sustained the state's objections to the following questions propounded by the defendant to Marcille Benefield on cross examination.

"Q. Now, it has been during all the time of your married life and during the time Mr. Benefield has been in the automobile business that he has brought various cars for you to use?

\* \* \* \* \* \*

"Q. I say, at all times before and after the incident you testified to, Mr. Benefield brought you numerous automobiles?

\* \* \* \* \* \*

"Q. You have had the use of several automobiles since that incident?

\* \* \* \* \* \*

"Q. Mr. Benefield has brought you several automobiles since this incident, is that correct?

\* \* \* \* \* \*

"Q. The automobile was for your use and the family and so forth?"

\* \* \* \* \* \*

The court also sustained the state's objection to the following question propounded to the defendant:

"Q. Subsequent to that, Mr. Benefield, did you take another car up there?"

Defendant's first insistence of error in brief is that the above questions were designed to elicit evidence in support of his defense, "that in connection with the pending divorce it was the agreement between himself and Mrs. Benefield that he was to 'keep her dependable transportation like I have in the past, as long as she was single.' That Mr. Benefield was in the used car

**342**

business and had provided various cars for the family use over the years; that the Buick was merely one car in a series which would fulfill his continuing obligation to keep her in dependable transportation as long as she was single; that he left another car there when the Buick was taken away; that the instrument referred to as a bill of sale was a document prepared merely to show 'some identification to the car while she was driving it' and thus was not an instrument intended as a transfer of legal title; and therefore under the agreement between the parties he had the right to substitute other cars for the Buick in question; or, at least, he had an honest belief that he had the right to so take the Buick."

"Also supportive of or related to this defense were questions propounded to Mrs. Benefield designed to show that she recognized that there was an agreement concerning allowing her to use various cars in that the difficulty began because of dissatisfaction with the substitute car, a Malibu, to which state's objections were sustained." These questions are as follows:

"Q. Actually, the thing never culminated or came to a head until one day when you stopped him down there on the street and said you didn't like that Malibu, is that right?"

"Q. And it wasn't until you and Mr. Benefield got into a fuss and fight about the Malibu or about a week or two later that you hauled off and took out this warrant?"

Defense counsel's brief states further: "Also along this line and to show bias were questions to which objections were sustained."

"Q. (to Mrs. Benefield) And subsequent to that time Mr. Benefield then married his wife, Nancy, is that correct?"

"Q. And it was after Mr. Benefield married his second wife—?"

The next insistence in brief is that "the automobile was the property of the Bank of Wadley; and therefore, (a) it was not the personal property of Marcille Benefield; and, (b) since the Bank owned the car it could, and did, have authority to authorize and instruct appellant to get it and place it back on his lot; and, (c) since the car belonged to the Bank and could not be sold or disposed of without the consent of the Bank the appellant could pass no title to Marcille Benefield by virtue of the 'Bill of Sale;' that Marcille Benefield knew the Bank owned or claimed to own the automobile at the time of and before she received the 'bill of sale.' The trial court repeatedly sustained the state's objections to questions propounded to the state's witnesses on cross examination and to defendant's witnesses on direct examination designed to support this defense." These questions are as follows:

To Mrs. Benefield, on cross examination:

"Q. And you have no knowledge other than what you said a minute ago about the Bank of Wadley, as to the title of this automobile, the ownership of this automobile, prior to the time it came into your possession?"

*   *   *   *   *   *

"Q. Now, the fact that you called this car your car, merely in the sense that you claimed it, is that right?"

On direct examination of defendant's witness Paul Hooton, who was one of the attorneys in the divorce action:

"Q. I'll ask you again Mr. Hooten, if during the course of the conversation which this lady expressed, if anything was said in her presence or hearing, this would be prior to the time this thing was made, with regard to the ownership or claim of the Bank of Wadley as to that specific automobile?

*   *   *   *   *   *

"Q. I'll ask you, Mr. Hooten, if at any time prior to this particular document which has been offered in evidence as State's Exhibit I, If you or anyone in your presence or hearing and in the presence or hearing of Mrs. Marcille Benefield, stated to her anything regarding the fact that the Bank of Wadley claimed that automobile."

\* \* \* \* \* \*

"Q. The conversation that took place there in your office, Mr. Hooten, regarding transportation, will you tell the court and jury, as best you can recall, what was said with regard to this particular automobile?

"A. She raised the question that transportation up to that time hadn't been adequate in her opinion. And he asked her then 'what about this car that you're driving now?' I don't know how long she had been driving it, but anyway, she was driving a particular car at that time. And I think he may have said these words to her. 'Marcille, you know that this car belongs to the Bank of Wadley."

"MR. YOUNG: We object to that, Your Honor."

"THE COURT: Sustained. Strike out the statement about the Bank of Wadley."

In sustaining the objections to the questions propounded to Marcille Benefield, set out hereinabove, the court stated:

" \* \* \* the Court is not going to let any testimony in this case about any car other than this car \* \* \* the court is not letting any testimony in this case except about this particular car. If it is about the other cars she used, it's out."

In sustaining the state's objections to the questions to Mr. Hooton the court said:

"I think that the bill of sale speaks for itself and cannot be varied by parol evidence. That's the opinion of this Court."

For the same reason the court refused to allow the introduction in evidence of the mortgage given to the bank by Bobby Benefield

We find no error in the court's rulings. The questions asked Mrs. Benefield concerning other automobiles called for testimony immaterial to the issues involved.

In the absence of fraud, mistake, or misrepresentation, parol evidence will not be received to contradict or vary the terms of the contract for the sale of the automobile. Mask v. Evers, 30 Ala.App. 420, 7 So.2d 95.

In developing interest or bias of a witness the range of cross examination rests largely in the discretion of the trial court and the court's rulings will not be disturbed unless it clearly appears the defendant was prejudiced thereby. Jackson v. State, 272 Ala. 566, 133 So.2d 210. We find no abuse of discretion is shown here.

James Bassett, defendant's employee, called as a witness for the state, was asked on redirect examination if Marcille said anything to him when, acting on defendant's instructions, he drove the Buick away from her home. The witness stated:

"A. She said, 'James, you better not take my car.'"

"Q. And what, if anything, did you tell her?"

"A. I told her that I had to."

On recross examination the witness was asked:

"Q. Now, didn't she say she didn't know whether she liked that Malibu or not?"

The state's objection was sustained to this question.

It is argued that the sustaining of this objection was reversible error under the rule that where a part of a conversation is given in evidence the whole of it may be brought out by the opposite party. See 6 Ala.Dig. Crim.Law, ⚙396(2) for cases. This rule is subject to the qualification that the portion of the conversation not relevant to the matter in question may be excluded by the trial court. 3 Wharton's Criminal Evidence, 12 Ed., p. 264, Sec. 896. The question called for matters not relevant to the inquiry. We find no prejudice in the ruling.

The Judgment is Affirmed.

Affirmed.

JOHNSON, Judge (dissenting).

The writer is impressed with the fact that this is a case originating from a domestic "squabble and fuss" between a husband and wife. The appellant is charged with grand larceny, an offense the commission of which requires a felonious intent to take and "carry away", which, in my opinion, under the evidence was not here proven. A perusal of the evidence in this case reveals an offer or attempt by appellant to prove the arrangements for and/or furnishing, substituting and exchanging of automobiles for the use and transportation of his wife and children over a period of years. Numerous attempts by appellant to establish by evidence the existence of this arrangement were, in the opinion of the writer, erroneously excluded by the trial court from admission into evidence. Such should have been admitted as evidence intending to show appellant's intent. The law, couched in its majesty, ne'er demands the impairment of joint parental suspension so indispensably essential in a home charged with the sacred responsibility of rearing four children by alienating the father therefrom because of long existing strife and contention, and perhaps hate, existing between the parents.

My colleagues are inclined to follow the court's ruling that the alleged "bill of sale" was not, as stated below, subject to contradiction or a variance of terms by parol evidence. I feel, however, that this alleged "bill" is the crux of this case.

I agree with appellant's contention that whether or not the instrument in question (State's Exhibit 1) was a bill of sale or not was a "question for the jury to determine", and that the court prejudiced appellant in the eyes of the jury in stating, in the presence of the jury, "I think that the bill of sale speaks for itself and cannot be varied by a parol evidence. *That's the opinion of this court."* (Emphasis ours.)

In my opinion the foregoing was error. The record reveals that this alleged bill was not actually signed by any of the parties thereto, but by Charlene Calhoun, office assistant by appellant's instructions, and the evidence shows that appellant cannot read or write; that on the alleged bill, Mrs. Benefield is listed at the top of the space marked "sold to", but at the bottom of the bill, in that space normally reserved for the signature of the buyer, the names "Robert Benefield" and "Marcille Benefield" appear by the words "Buyer", with Robert's name appearing first.

Some of the testimony also tends to show that this automobile was, in fact, *not* the property of Mrs. Benefield, but of the Bank of Wadley; that the bank had obtained some interest in this automobile when it financed a mortgage loan thereto to Robert Benefield, the same party who allegedly signed the alleged bill of sale in question; that this automobile had been repossessed and was taken by appellant to his car lot at the request of and as the "agent" of the bank; and that appellant had no authority to sell the same to anyone without the permission of the bank and that appellant had not sought such permission.

The "bill of sale" was so ambiguous in its terms that it is questionable and not

clear as to who the actual owner of the automobile was. Because of this, parol evidence *should* have been allowed into evidence by the trial court to clarify this instrument.

"Where the terms of a written instrument are contradictory, ambiguous, or inharmonious, extraneous evidence is admissible to aid the court in arriving at the true intent of the parties as it is expressed in the words they used." John Hancock Mutual Life Insurance Co. v. Welsh, 267 F.2d 152 (C.C.A. 5th Cir., Ala.)

The case of Coley v. W. P. Brown & Sons Lumber Co., 251 Ala. 235, 37 So.2d 125, states in part as follows:

" ' "It is only by the aid of parol evidence that courts can be certain what were the circumstances under which a contract was made; what was the relation of the parties, and what was within their mutual knowledge. * * * The evidence simply helps to a proper understanding of the words and stipulations of the writing." McGhee et al. v. Alexander, 104 Ala. 116, 121, 122, 16 So. 148, 149.' Olsson et al. v. Nelson, 248 Ala. 441, 445, 446, 28 So.2d 186, 189."

The case of McClendon v. Eubanks, 249 Ala. 170, 30 So.2d 261, states in part that "if the language of the contract is not plain and unambiguous, then parol evidence is admissible to aid in interpretation of the contract".

Thus, the "opinion" voiced by the trial judge was not only improper but might have prejudiced appellant's rights in the eyes of the jury. This ruling in effect took away from the jury the right to decide if the "bill of sale" was such and instead positively informed the jury that it *was* a bill of sale. If this ruling by the court might have prejudiced the minds of the jury as to materially injure appellant, reversible error was committed. Dennison v. State, 17 Ala.App. 674, 88

So. 211; Williams v. State, 34 Ala.App. 253, 39 So.2d 29; Neal v. State, 36 Ala. App. 156, 54 So.2d 613; Nix v. State, 40 Ala.App. 357, 114 So.2d 286; Gray v. State, 44 Ala.App. 12, 200 So.2d 514.

The divorce decree with its alimony provision was never offered in evidence. The basis of this dispute about the automobile in question stemmed from the provisions of this decree. In my opinion, the proper evidence under the Best Evidence Rule of proof of the terms of the marital dissolution, including alimony, would be this decree of the court, the lack of which, or showing thereof, made the propriety of the secondary evidence questionable.

In addition to proof of the legal requisite of felonious intent the law in the crime here alleged also demands proof of the asportation of the property in question. Proof of asportation is usually shown by proof of the selling, concealing, changing the identity or other larcenous and felonious acts by the accused. As a contrast, in the case before us we can observe naught save acts of conduct of good faith on the part of this appellant.

Under the undisputed testimony of both the President of the Bank of Wadley and of the appellant, appellant carried the automobile, as instructed by the bank and in the presence of a third party, to his used car lot for resale. Said automobile had been repossessed by the bank from Robert Benefield, a cousin of appellant. Insofar as the record reflects the same remained on this lot for many weeks in daily view of the transient and observing public.

Basically, we understand this to be most of the evidence and we reiterate that such does not constitute the offense of grand larceny by appellant.

In conclusion, I feel that the trial court erred in failing to grant appellant's motion to set aside the verdict and sentence because such was contrary to the law and evidence.

For the foregoing reasons, I feel that this cause is due to be reversed and remanded and must respectfully dissent from the majority opinion.