245 So.2d 834

**Henry Lee MITCHELL**

v.

**STATE.**

**6 Div. 9.**

Court of Criminal Appeals of Alabama.

Jan. 12, 1971.

Rehearing Denied March 2, 1971.

MacDonald Gallion, Atty. Gen., and Joseph Victor Price, Jr., Asst. Atty. Gen., for the State.

CATES, Judge.

Second degree murder: sentence, 15 years.

The tendencies of the State's evidence showed that Mitchell shot Corine Burkhalter with a 12 gauge double barreled sawed-off shotgun.

I

He and the deceased's daughter (Jimmie Lois) had previously lived together in a manner from which—on the proof before the jury—it would be reason-

Joseph A. Colquitt, A. K. Callahan, and George W. Nichols, Jr., Tuscaloosa, for appellant.

able to infer they were man and wife though not blessed by ritual.

During the State's opening, before testimony, we find the following excerpt:

"(During the statement of expected proof by Mr. Lackey, the following occurred):

"MR. LACKEY: * * * We expect the evidence to show that a sort of relationship had existed between the Defendant and Jimmie Lois Burkhalter for a number of years; that they were not married, but that they did have together 2 or 3 children. We expect the evidence to show that it was a kind of a 'sometime friend'. He did not live with Jimmie Lois, but he was around a good deal. We expect the evidence to show that on this particular night, and earlier in the night, maybe 10:00 or 10:30 or so, Jimmie Lois had a call from the Defendant, Henry Lee Mitchell, and we expect the evidence to show it was a threatening call. We expect the evidence to show that Jimmie Lois Burkhalter got her mother, the deceased and victim in this case, Corinne Burkhalter, and her young brother, William Charles Burkhalter, to go in the car with her, and they went to Tuscaloosa.

"MR. CALLAHAN: We object to all this.

"MR. NICHOLS: It is going too far afield.

"THE COURT: Overruled, for the moment.

"MR. NICHOLS: I would like for the jury to understand this is not evidence.

"THE COURT: Yes, this is a statement of the case, they expect the evidence to show that.

"MR. NICHOLS: Yes sir.

"MR. LACKEY: Then the 3 of them went to the Tuscaloosa County Sheriff's Office and sought a warrant in a peace proceeding against Henry Lee Mitchell, the Defendant. We expect the evidence to show they were unable to get such a warrant, and they went to the City of Tuscaloosa Police Department and sought to get a peace proceeding warrant against the Defendant, but that they were unable to get one there, and that they went to the Northport Police Department and asked about a warrant, or sought to get a warrant there, and were again refused a warrant. We expect the evidence to show that they then, the 3 Burkhalters, the mother, the daughter, and the son, started home. They got to the intersection of Tenth Street and 30th Avenue in Northport, near Holman Lumber Company, and they met another car driven by one George Mayfield. We expect the evidence to show that George Mayfield, the driver, was known to them, and that he was a friend of the Defendant. We expect the evidence to show that they stopped him, and Jimmie Lois—

"MR. CALLAHAN: We object to that.

"MR. LACKEY: We expect the evidence to show that.

"THE COURT: That is what he expects the evidence to show.

"MR. CALLAHAN: We object to it.

"THE COURT: Overruled."

In brief it is argued that the District Attorney's sarcastic figure of speech "sometime friend" was prejudicial to the defendant.

Without moralizing as to the risks a man runs in taking up with a woman without benefit of clergy, we observe that the trial judge told the jury that the statement was not evidence.

The rules relating to the closing summation or arguments of counsel after all the evidence is before a jury do not apply to those which govern counsel in making the opening statements.

The opening statement serves to give the jury an outline of what counsel expects to

prove. The fact that counsel does not prove all that of which he creates expectation is not necessarily error. This because an opening statement by counsel, of course, is not evidence.

However, for the prosecutor to lay claim to that which he knows he cannot prove, either by reason of fact or legal inadmissibility, calls into question his good faith in making the statement. He thereby runs the risk (1) of creating a gap in his own credibility or (2) of causing, on objection, either the trial judge to grant a mistrial or an appellate court to reverse an otherwise merited conviction.

The basic principle laid down by the authorities is based on whether on not the prosecutor's statement of expectation has been made in good faith. There is always the possibility in human affairs that the testimony of which counsel has spoken may never come about. Witnesses die, disappear and turn up married to defendants, claiming privilege.

The relationship of defendant and Jimmie Lois under the prosecution's theory was the point of germination of this killing. Hence, evidence of it was relevant and inferences from it were arguable by counsel. We find no error in the rulings set out above.

## II

In brief appellant would gather together a number of the District Attorney's articulations as forming a nexus of prejudice. However, after a careful consideration of each, singly and cumulatively, we find no probable injury to any substantial rights of the defendant. See Sanford v. State, 38 Ala.App. 332, 83 So.2d 254, and Supreme Court Rule 45.

## III

■ Under the second proposition of his argument, appellant claims error in a line of questioning by the State of the prosecution witness Jimmie Lois Burkhalter:

"Q Now, Mr. Nichols asked you about the time he and Mr. Callahan came to see you. Did Henry come too?

"A No sir.

"Q I will ask you if Mr. Nichols or Mr. Callahan, either one of them, asked you, in substance, '*do you really want to see Henry Lee Mitchell go to the electric chair,*' or something to that effect, or 'lose his life'?

MR. CALLAHAN: I don't object to that.

"A I don't remember whether he did or not.

"Q I will ask you if Henry Lee asked you something to that order, whether or not you wanted him to lose his life because your mother lost hers?

"A I don't remember—no, he did not.

"MR. CALLAHAN: Judge, I might say this: Mr. Lackey knows I don't investigate a case this way, and I resent it.

"MR. LACKEY: Judge, if he thinks I misstated it, I am sorry.

"THE COURT: Proceed.

"MR. LACKEY: I thought that was said.

"THE COURT: You said you did not object to it, and you made the suggestion, I didn't ask. Just make your exception. Let's proceed.

"Q Just go ahead.

"A He said they were talking about giving him life.

"Q Talking about him getting life?

"A Yes sir.

"MR. NICHOLS: We move for a mistrial.

"MR. LACKEY: They have gone into what he said.

"THE COURT: I am going to overrule the motion for a mistrial, but I will sus-

tain the objection to anything further about that line of questioning.

"MR. LACKEY: Excuse me. Let me ask it, and then overrule it.

"THE COURT: I don't care to hear you ask it.

"MR. LACKEY: They asked about the conversation. They got some identical testimony, wherein she said, 'yes, Mr. Nichols, I told you something different that day', and I think I have a right to try to go into the rest of their conversation.

"THE COURT: And I overruled his motion.

"MR. LACKEY: All right, sir.

"THE COURT: But let's don't proceed any further.

"MR. NICHOLS: I respectfully disagree, and we except.

"MR. CALLAHAN: You are overruling my motion for a mistrial?

"THE COURT: Yes sir.

"MR. CALLAHAN: I except." (Italics added)

Appellant argues that the thrust of the italicized language was to show that appellant's counsel, seemingly conscious of their client's guilt, were seeking to settle the case.

We observe first that defense counsel expressly waived objection. Second, the witness's answer, "He said they were talking about giving him life" was vague as to who "they" intended. If it meant defense counsel, their telling Mitchell's quasi spouse —who might have been qualified to claim privilege—of their expectations was irrelevant. Also, the last question quoted above was not objected to.

### IV

During cross examination of this same witness, complaint is made of the trial judge's comment:

"Q You heard shots made there, and then the other shots, and then you heard the shot that hit your mother; is that your testimony?

"A No sir.

"Q I thought that was your testimony. Rather than keep going over this—

"THE COURT: You just twisted around what she said.

"MR. NICHOLS: Did I?

"THE COURT: Yes sir.

"MR. NICHOLS: I didn't do it intentionally.

"THE COURT: You did, anyway. You have twisted it around. She said no. Her answer was no, she didn't say that, and she is correct. Now, go on and ask the same question again, and then you can get it straight. You know what you said, I think. Do you want the question asked?

"MR. NICHOLS: I had that notation there.

"THE COURT: This is a correction. Try to take it down right, as she said it, and maybe she will get you straight.

"MR. NICHOLS: Yes sir.

We think the foregoing is susceptible of being construed as a helpful attempt to expedite the cross-examination rather than as anything designed to ridicule defense counsel. We distinguish the instant situation from that in Neal v. State, 36 Ala.App. 156, 54 So.2d 613. Moreover, there was no objection to the court's statement.

We have examined the entire record under Code 1940, T. 15, § 389 and consider the judgment below should be

Affirmed.