DeCARLO, Judge.
Driving while intoxicated, fine two-hundred dollars.
The grand jury of Montgomery County, Alabama indicted appellant for driving under the influence of intoxicating liquors or narcotics. After a jury trial on February 3, 1976, a verdict of guilty was returned and a fine of two-hundred dollars was assessed against Patterson. A notice of appeal was given and a motion for a new trial was filed. On August 12, 1976, after five continuances, it was denied without a hearing.
The State’s evidence showed that W. D. Blackwell, a State Trooper for ten years, saw Patterson on September 16, 1975. Appellant was in the vicinity of a night club known as “The Spread” in Montgomery, Alabama. Blackwell testified that he observed appellant drive his vehicle slowly off the parking lot of the club. As the appellant started on what is known as Twain Curve in Montgomery, he proceeded on the wrong side of the road and “started moving and weaving” until he got onto the right side of the road. At that point, appellant’s vehicle hit the gravel part of the shoulder and continued for about one-quarter of a mile until it ran through a stop-sign. Blackwell stated that he then turned on his blue light and appellant’s vehicle stopped. After he approached the car and asked the appellant to get out, the appellant seemed to weave a little bit or slightly stumble on leaving the car. The officer recalled that appellant was unsteady on his feet and had the odor of intoxicants on his breath. At the time no one was in the vehicle with appellant, and after informing the appellant he was charged with driving while *545 intoxicated Blackwell took him to the Montgomery County Jail.
Blackwell stated that he read Patterson his rights at the jail concerning refusing or taking the approved chemical test of breath for determining blood-alcohol content. After being advised of these rights, the appellant consented to take the examination and Blackwell administered a photoelectric in-toximeter test. [Hereinafter P.E.I.]. The officer stated that between the time of arrest and giving of the test, Patterson did not consume any alcohol or use any mouth wash. He could not recall whether appellant smoked a cigarette but added that as a rule he did not “let” anyone smoke in his patrol car. Blackwell stated that the test was administered about 8:20 P. M., some twenty minutes after the appellant’s arrest.
The officer testified that his training on the P.E.I device consisted of five days of actual classroom exercise and involved the administering of the test some twenty-five times. He added that he had administered the test thirty or forty additional times. Blackwell explained that the procedure used to conduct the test appears on a blank orange card which is kept with the P.E.I. machine. He said that the procedures were set up by the Department of Health and that he followed those procedures in testing the appellant. Further, Blackwell stated that he completed a P.E.I. operating record. He identified a duplicate of four sheets making up the record and it was admitted into evidence without objection. The P.E.I. test reading as to the alcohol content of appellant’s blood was 0.16 percent.
Robert B. Finley was employed by the Alabama Department of Public Health and was a service technical director for the chemical test intoxication program. Finley stated that he had been employed in this capacity for approximately six years and listed his qualifications, training and background. He stated that the State Department of Public Health approved the use of the P.E.I. device. Further, he identified a certified copy of the Department of Public Health’s records showing their adoption of this method for testing highway intoxication and their approved written procedures governing its use. Finley also identified a certified copy of a memorandum signed by the Director of Public Safety, designating the use of a P.E.I. for all chemical breath tests in determining the blood-alcohol level of individuals suspected of driving while under the influence of alcohol. This document and the certified copy of the Department of Public Health’s approved methods for chemical tests were admitted into evidence without objection. During his testimony, Finley outlined the procedure adopted for administering the P.E.I. tests. He explained that when a person has a blood-alcohol level of 0.10 percent, he is influenced by intoxicants to the degree where he can not safely operate a motor vehicle.
R. C. Massey was employed by the Department of Public Safety in the “implied Consent Unit.” He testified that on September 9 and October 2, 1975, he checked the P.E.I. machine at the Montgomery County Jail and found it to be accurate.
At the end of Massey’s testimony, the State rested and the appellant moved to exclude the State’s evidence. The motion was overruled and the appellant took the stand in his own behalf.
Patterson recalled that on September 16, 1975, he went to “The Spread” about 6:30 P. M. He left about an hour later and had consumed only three “beers.” Appellant denied driving on the wrong side of the road or running off of it. Further, he denied being intoxicated and running through the stop-sign. Patterson said the officer was “telling us a story.”
I
Prior to qualifying the jury, the defense handed to the trial judge a document styled “State of Alabama v. Stephen A. Patterson” and headed “Jury Qualifications.” That document contained seven questions to be asked the entire venire. The fifth question was: “Have each member of the jury stand and state if they would convict for driving while intoxicated if the defendant had only one drink.” The court refused to qualify the jury with this *546 question and the appellant contends this was error. Counsel argues that either party has the right to examine jurors as to their qualifications, interest or bias. Although counsel admits the right to examine jurors is exercised in the sound discretion of the court, he insists that the inquiry should be liberal and extend to all matters touching upon the prospective juror’s qualifications, interest or bias.
While it is true that the qualifying examination of jurors should be liberal and extend to all matters touching qualifications, interest or bias, the right must be exercised within the sound discretion of the court. Dyer v. State, 241 Ala. 679, 4 So.2d 311; Aaron v. State, 273 Ala. 337, 139 So.2d 309.
Under the present circumstances an abuse of discretion was not shown.
II
Appellant asserts that the court erred in admitting the results of the breath test made with the P.E.I. device. He insisted that the Alabama State Board of Health had not approved a procedure to be followed in administering the P.E.I. test.
The Alabama Chemical Test for Intoxication Act (T. 36, §§ 154-158, Code of Alabama 1940, Recompiled 1958), provides that tests showing blood-alcohol content by chemical analysis of a person’s breath shall be admissible as evidence. Further, our statute creates a legal presumption that if the breath analysis test shows the blood-alcohol content of the person driving a vehicle to be 0.10 percent by weight of alcohol or more, he shall be presumed to be under the influence of alcohol. The statute also states that in order for the chemical analysis of the breath to be considered valid, it shall have been performed according to the methods approved by the State Board of Health.
In Patton v. City of Decatur, Ala., 337 So.2d 321, the Supreme Court held that it was an absolute necessity that profer be made of a duly certified and authenticated copy of the methods or regulations duly adopted or approved by the State Board of Health governing the administering of the P.E.I. test.
In the present case, a duly certified and authenticated copy of the rules and regulations adopted and approved by the State Board of Health governing the administering of the P.E.I. test was admitted without objection. Additionally, it was shown that the arresting officer who performed the test, had completed the requisite course of study laid down by the Board of Health for administering the test. The officer stated that he had followed the methods outlined on the operating card, and during the trial, identified the card indicating the procedures followed in the appellant’s test. Further, he testified that the blood-alcohol content reading was 0.16 percent. Under these circumstances, the test was performed according to the methods approved by the State Board of Health and its results were properly admitted.
Ill
It is contended that the court erred when it sustained the State’s objection to the following question addressed to Officer Blackwell:

“Q And the reason that y’all were doing this is because a State Trooper got into a lot of trouble at The Spread, isn’t that correct?”
Counsel maintains this improperly limited his cross-examination by not allowing him to show the bias of State Troopers towards the club and its patrons.
Further, the record shows the following occurred during the appellant’s re-direct examination:

“Q Were you there the night that the State Trooper got in trouble at The Spread?
“MR. BELL: I’m going to object to that.
“THE COURT: Overrule your objection.
“Q Were you there?
“A No, sir.”
*547 The range of cross-examination rests largely in the discretion of the trial court and unless it clearly appears that the defendant was prejudiced by its curtailment, the court’s rulings will not be disturbed. Benefield v. State, 44 Ala.App. 339, 208 So.2d 449; Wright v. State, 49 Ala.App. 539, 274 So.2d 95.
We find no abuse of discretion under the facts shown.
No reversible error appears in the record.
AFFIRMED.
All the Judges concur.